GLEASON and others, Respondents, vs. WAUKESHA COUNTY and another, Appellants.

*April 25 — May 16, 1899.*

*Special assessments: Gas and water connections: Equity: Substantial compliance with statute: Notice: Jurisdiction: Constitutional law.*

1. Unless a literal compliance, in regard to mere matters of form in the imposition of special taxes and local assessments, is expressly required by statute, failure in that regard will not warrant the interposition of a court of equity, if there has been a substantial compliance in all things designed to safeguard the interests of property owners.

2. Under a city charter prohibiting the paving of streets in which gas and water mains were located, without first requiring connections therewith to be made and pipes run therefrom to the curb, where the common council had taken the required steps preliminary to ordering such work done at the cost of the property fronting on the street, and by a recorded vote directed the work to proceed, it could thereafter delegate to the board of public works the mere executive duty of giving the proper notice, and causing the work to be done in the event the property owners failed to do it within the time limited.

3. The law being ample to authorize the imposition of taxes complained of, the street having been regularly ordered paved, and plans for such gas and water connections filed and approved, the common

council had jurisdiction to proceed to take all subsequent necessary steps to charge abutting property, and no notice, other than the public letting of the contract to the lowest responsible bidder, is required to fix the cost of the work as to each parcel of property.

4. Such gas and water mains were owned, controlled, and operated by private persons under a franchise which required all necessary service pipes and connections with the mains, when ordered, to be made at a reasonable cost to the property owners served and within a reasonable time. The evidence showed that the cost of laying gas and water service pipes, from mains to the curb, was balanced by an equivalent benefit to the property fronting on the street. *Held,* that the charter provisions, under which taxes are imposed on such property to pay therefor, do not violate the constitutional inhibitions against taking private property for private use, or taking private property for public use without just compensation.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

Action to avoid special taxes levied on property of plaintiffs for the expenses of making gas and water connections with water and gas mains and laying pipes from such connections to the curb line of the street in front of such property in the city of Waukesha, Wisconsin, such taxes having been levied pursuant to an attempt by the municipal authorities of such city to comply with sec. 925—223, Stats. 1898, which provides that, "Whenever the council shall order the paving or repaving of any street in which water, gas mains and sewers or either of them shall have been previously laid or constructed they may also by resolution require water and gas service pipes and house drains to be first laid in such street, at the cost of the property fronting thereon, from the main sewer, water and gas mains in such street to the curb line on either side thereof, at such intervals as the council shall direct, along the whole length of such paved street, except at street and alley crossings, and notice shall thereupon be given to the owners or occupants of the property adjoining such street, by publication thereof for six days in the official paper, requiring them to do such

Gleason and others vs. Waukesha County and another.

work opposite their respective lots according to plans and specifications to be before prepared and filed in the office of the board of public works, city clerk or city surveyor, as the council shall prescribe, showing the location and size and the kind and quality of material of such lateral sewers or drains and water and gas service pipes; and if such owners or occupants shall refuse or neglect to do the same before the paving or repaving of said street so ordered and within ten days after the publication of such notice, the board of public works or the officer or officers discharging the duties thereof may procure the same to be done and charge and assess the expense thereof to the lots or parts of lots fronting upon such work in the manner provided in and by subchapter 18 of this chapter, and the same shall be levied and collected as other special assessments are levied and collected; provided, that no street shall be paved or repaved by order of the council unless the water and gas mains and service pipes and necessary sewers and their connections shall, as required by the council, be first laid and constructed in that portion of such street so to be paved or repaved."

The reasons assigned in the complaint for avoiding the taxes are, first, because notice of the improvement was not given or the connections ordered constructed by resolution of the common council duly adopted, nor were any of the steps required to charge plaintiffs' property with the costs thereof taken in the manner required by the city charter; second, because the city charter provision violates the constitutional inhibition against taking private property for public use without just compensation therefor; third, because the water and gas systems of the city are private property, the owners of which furnish water and gas only upon application of property owners, and that plaintiffs did not request the putting in of the connections between the mains and the street curb line in front of their property, neither

did they use or derive any benefit therefrom or have any authority to use the connections without the consent of the corporations owning the waterworks and gas works systems. The allegations as to all irregularities in the proceedings of the city council, upon which the taxes complained of are based, were put in issue by the answer.

On the trial the following facts were established by the evidence: The waterworks and gas works systems are the property of private corporations. Persons owning lots abutting on streets where the water and gas mains are located can obtain service, either water or gas, only by contract with the corporation owning the main. Plaintiffs are the owners of the property taxed. All the allegations of fact in respect to the taxes are true, except those in regard to failure of the municipal authorities to comply with the city charter in respect to making such taxes a legal charge against such property. The following proceedings were taken for the purpose of making the expense of putting in the gas and water connections a legal charge upon plaintiffs' property: A resolution was adopted by the common council ordering the street to be paved and the city engineer to prepare and file in his office plans and specifications showing the location, size, kind, and quality of material of lateral sewers or drains and water and gas service pipes to be thereafter ordered, to the curb line on both sides of the street. The city engineer complied with such resolution and his work was approved by the city council. The board of public works was, by vote of the council, empowered " to force the connections." The action of the council at this point was evidenced by the record as kept by the city clerk, in the following language: " Plans for connections for water and gas and house drains on Broadway, Clinton, Main, and Madison streets, were presented by the city engineer, and on motion of Alderman Dick were approved, and the board of public works empowered to force the connections." A

notice to private owners that they were required to construct or cause to be constructed the water and gas connections in accordance with the plans and specifications on file in the office of the city engineer of the city was given by publication in the official paper of the city for three successive weeks. The notice was signed by the members of the board of public works, stated that the council had ordered the paving of the street and authorized the board to notify private owners to make the gas and water connections, that notice was given pursuant to such authority, that the proceedings were under sec. 223, ch. 20 of the city charter, that the work was required to be done by the property owners by a day therein named, which, as to length of time, complied with the charter, and that if the work was not done within such time by the property owners, it would be let by contract as provided by law. The property owners failed to do the work and thereupon it was contracted for pursuant to an award made on competitive biddings on public notice, published in the official paper of the city for three successive weeks, that the work would be let. There was no question on the trial but that the contracts were fairly made and the charges for the work and material were just.

The court found the facts in favor of plaintiffs, and in respect to the alleged irregularities and jurisdictional defects found that the council, by resolution, ordered the streets paved, and that plans therefor, including gas and water connections, were prepared by the city engineer and adopted by the council, but that the council did not adopt any resolution requiring gas and water connections to be constructed at the expense of the abutting property. The court specially found, in addition, that the gas and water mains were under the control of private corporations and that the city was powerless to make connections therewith except by permission of such corporations, and that the connections were for the benefit of the corporations and not the public. Further,

that the work was done against the protest of plaintiffs as regards charging their property with the expense thereof. The conclusion of law was that the taxes were illegal and void and plaintiffs entitled to a judgment restraining the county clerk from selling their property for the payment of such taxes. Judgment was rendered accordingly.

For the appellants there was a brief by *V. H. Tichenor*, attorney, and *E. D. Walsh*, of counsel, and oral argument by *Mr. Walsh*.

For the respondents there was a brief by *Ryan & Merton*, and oral argument by *E. Merton*.

MARSHALL, J. The tax complained of seems to have been held invalid by the trial court because the common council of the city of Waukesha failed to pass a resolution requiring the construction of gas and water connections at the cost of the property fronting on the street. We are unable to sustain the finding of fact that no such resolution was passed. True, the evidence does not show that the council acted on the subject in literal compliance with the statutory call for a resolution, so far as relates to mere matters of form, but it is the substance of things that governs when application is made to a court of equity for relief. Where there has been a substantial compliance with statutory requisites in regard to the imposition and collection of special taxes or local assessments, and the complainant is unable to show that any injustice has been done to him, equity will afford him no relief against such taxes or assessments. *Wells v. Western P. & S. Co.* 96 Wis. 116; *Hennessy v. Douglas Co.* 99 Wis. 129. If the doctrine of strict compliance with all the steps necessary to the imposition of a special tax obtained in equity independent of any actual injustice to the property owner, it must be borne in mind that strict compliance with a statute does not mean, necessarily, literal compliance, using the term in regard to mere matters of

form, unless that is expressly required by the statute. *Hunt v. Stinson*, 101 Wis. 556. In the absence of such requisite, a substantial compliance with all things designed to safeguard the interests of property owners satisfies all the demands of strict compliance, under the rule in that regard often stated in actions for relief against special taxes.

Under the charter of the city of Waukesha the municipality was prohibited from paving a street in which gas and water mains were located without first requiring connections to be made therewith and pipes run therefrom to the curb lines of the street. There was no way provided for complying with that requirement except by following the provisions designed to compel the abutting property owners to bear the expense. When the common council of the city, after taking the required steps preliminary to ordering the work to be done at the cost of the property fronting on the street, including a formal resolution for paving the street and directing the preparation of plans and specifications for water and gas service connections and pipes to be thereafter ordered to the curb lines and the approval of such plans and specifications, by a recorded vote directed the work to proceed and "the board of public works to force the connections," the charter provision in regard to ordering the work done at the cost of the property fronting on the street was in effect complied with. The plans for the work, made in accordance with the preliminary resolution, and the order of the board to proceed with the paving and force the connections, with the charter provision to which such direction clearly referred, to all intents and purposes were parts of one complete proceeding by resolution, as the charter required. The subsequent proceedings were free from prejudicial irregularities if there were any at all. The charter did not require the council, as such, to give notice to the property owners to proceed with the work of putting in the service pipes. It simply required notice to be given, by au-

thority of the council of course, but not necessarily by the council. It was competent for the council to delegate to the board of public works the mere executive duty of giving the notice and causing the work to be done in the event of the property owners themselves failing to do it within the time limited in the notice.

If there were irregularities as to the manner in which the council proceeded to charge plaintiffs' property with the special tax, as before indicated, it by no means follows that equity can afford them relief. It has been repeatedly held by this court that where legal authority exists to make local assessments for street improvements, and sufficient has been done in an attempt to comply therewith to give the municipality jurisdiction of the subject in the given case, subsequent irregularities are immaterial in equity as against the duty of the property owner to bear his just share of the expense of such improvement. In *Wells v. Western P. & S. Co.* 96 Wis. 116, it was held that where an assessment of benefits had been properly made so as to obtain a basis for apportioning the cost of a pavement, subsequent irregularities were not necessarily fatal to the tax. In *Hennessy v. Douglas Co.* 99 Wis. 129, as to a sewer tax where the cost of the improvement was required to be assessed by the frontage rule, it was held that the establishment of the sewer district, and the filing and approval of the plans for the sewer, in connection with the law making the abutting property liable for a certain amount per front foot for sewer construction, satisfied the essential requisites of jurisdiction; and in the same case, as to a sidewalk tax, where the sidewalk was required to be constructed at the expense of the owners of the abutting lots, the basis of the assessment being the actual cost of the improvement as to each such lot, it was held that the determination of the common council to make the improvement, and advertisement for bids and letting of the work in a fair and public manner, satisfied all

jurisdictional requirements necessary to make the property equitably chargeable with its just proportion of the expense.

Within the principles of those· cases, plaintiffs here have shown no ground for equitable relief. The law was ample to authorize the imposition of the taxes complained of. The street was regularly ordered paved and plans for the gas and water connections were filed and approved. That gave the council jurisdiction to proceed to take all necessary subsequent steps to charge abutting property with the costs of laying the gas and water pipes. No notice was required, or proceeding, to arrive at a basis for the assessment of the taxes as to the amount of such assessment, other than the public letting of the contract to the lowest responsible bidder, because the law fixed, as the basis of the charges against abutting property, the cost of the work as to each parcel of such property. The rule is well established that where jurisdiction has been obtained by the ascertainment of a proper basis for the valuation of the amount of local assessments, and legal authority exists for such assessments, equity will not furnish relief against the mere irregular execution of the law where no injustice is shown, but will leave a complainant to such remedy as he may have at law. The owner of taxable property, where he seeks relief in equity, either as regards a general or local assessment, must be prepared to show more than that the taxes are illegal. He must show that they are inequitable and must pay all that in equity and good conscience he ought to pay, or suffer being turned away without any remedy whatever. That rule is fatal to the judgment appealed from, as there appears to be no question but that the putting in of the gas and water pipes was by public authority, pursuant to a resolution of the council to pave the street, and its approval of plans for the gas and water connections, and no question is raised but that the amount of the tax was a just measure of the labor and material required for the connections.

It seems that the trial court deemed the private owner-
ship of the gas and water mains, and control of making
service connections therewith, as significant and warranting
a conclusion that the taxes complained of were for expenses
incurred for the benefit of the corporations and not the ben-
efit of the public. As to the property owners it appears that
the court did not discover any benefit whatever from the
laying of the service pipes. On that portion of the findings
and conclusions respondents argue, both that the imposition
of the taxes was a violation of the constitutional inhibition
against taking private property for private use and also the
taking of private property for public use without just com-
pensation. The findings on this branch of the case seem to
be subject to many infirmities. The control of making con-
nections with the mains was vested in the private corpora-
tions in order to guard against unskilful work in that regard,
liable to seriously jeopardize the safety of property and the
convenience of all patrons of the water and gas systems.
It was a mere matter of insurance against serious dangers
that would otherwise exist, and was for the benefit of the
public generally, as much as for the benefit of the corpora-
tions. It gave the corporations no power whatever to deny
service from their systems of water and gas mains, and im-
posed no duty upon them other than to make the necessary
connections with such mains with reasonable promptness and
at reasonable cost whenever desired. As owners of public
franchises the corporations were bound to allow connections
to be made with the mains to serve all property fronting on
the streets where the mains were located, but at the expense
of the owners of such property. The franchises called for
delivery of water and gas at suitable outlets on the mains
in front of property, not for delivery at the curb lines of lots.
The service pipes were the property of the lot owners, not
of the corporations. Such corporations paid for the privi-
lege of controlling the matter of connecting service pipes

with the mains by doing the work when needed at reasonable cost, or permitting the property owners to have it done by some other agency.   The mere existence of the service pipes was no benefit to the corporations, but was rather an element of danger.   To say that laying gas and water pipes in advance of paving is no benefit to the public, is contrary to common knowledge of persons of average experience in municipal affairs.   Such a preparation of the street for the laying of a pavement avoids subsequently tearing up the street and making excavations, which would greatly impair the usefulness of the way during the progress of the work. It avoids many dangers of personal injuries to travelers, which the public corporation might be called upon to compensate,— a very important element, as the records of our court show.   It avoids danger of permanent impairment to the pavement, which is quite likely to result from disturbing it in sections.   In such cases great care is required in filling in excavations and restoring the street, in order that it may be in as good a condition as before.   Other important considerations could be mentioned, altogether rendering the laying of gas, sewer, and water connections in streets in advance of paving, of such importance that it is customary to require it to be done by law, as in the charter under which the city corporation of Waukesha exists.   Whether public interests require all work that may properly be required to be done under the surface of a street, to be done before laying a pavement thereon, is primarily a legislative question; and when the lawmaking power has determined it, and along the lines of wise municipal administration as demonstrated by experience, it is going a great ways to judicially declare that such determination is wrong.

Again, the idea in the finding of the trial court, inferentially expressed, and pressed upon us by counsel for respondents, that the laying of the service pipes was of no benefit to the property owners because they were not ready to use

them, cannot be sustained. It is generally considered that property fronting on a street is increased in value by the laying of water, gas, and sewer pipes, at least to the extent of the actual cost thereof, and municipal regulations are largely based on that theory, and are universally sustained by the courts, so far as the burden imposed upon abutting property does not substantially exceed the benefits thereto. Such improvements, and the incidental duties in regard to them, public and private, are classed with sidewalks and pavements. The law is too well settled on this subject to warrant any extended discussion of it here. No one can own property in a city and rightfully insist upon isolating it from all other property so far as burdens are concerned that result necessarily from those improvements that make communal life desirable. The private benefit and duty, and the public right to take private property for public use upon rendering just compensation therefor, and the sovereign power to make and enforce reasonable police regulations, operate together to control the subject of constructing streets and sidewalks and appurtenances of abutting property that must be located under the street, so as to impose the costs of such improvements upon abutting property at least to the extent of the benefits which accrue to the property from the improvements, and there is much authority to the effect that the imposition may exceed the benefits where an improvement is required by reasonable police regulations.

Numerous instances are found in the books where assessments for gas and water pipes in streets have been sustained. In *Allentown v. Henry*, 73 Pa. St. 404, a law authorizing local assessments for water pipes was challenged as unconstitutional because the benefits from such improvements were all general; but the court held that the benefits were chiefly local, as the use of the water was localized as to each parcel of abutting property, and the effect of laying the water pipes was to enhance the value of such property. In

Gleason and others vs. Waukesha County and another.

*Allen v. Drew*, 44 Vt. 174, it was held, substantially, that there is no difference between a local assessment for a sidewalk and one for a sewer or water service; that each in a degree benefits the public generally, but local property particularly because of its enhanced value from the improvement; that public interest justifies public control as to the time of making such improvements, and the local benefit justifies the local assessment to pay the costs thereby incurred, and that the question of whether the property charged is occupied or vacant is immaterial. In Ohio local assessments for gas construction were sustained. *Jonas v. Cincinnati*, 18 Ohio, 318; *Creighton v. Scott*, 14 Ohio St. 438.

There is no need to prolong the discussion. The charter provision under which the taxes complained of were imposed upon plaintiffs' property contemplates that the cost of laying gas and water service pipes will be balanced by an equivalent benefit to the property fronting on the street. So far as the evidence shows there was such equivalent in fact, hence, under the most recent holdings as to constitutional power to make such assessments, the law itself, and the taxes imposed under it, must be sustained so far as any objection thereto is made on constitutional grounds. *Norwood v. Baker*, 172 U. S. 269.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the complaint with costs.