[L. A. No. 6325. In Bank.—August 12, 1920.]

CITY OF PASADENA, Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

**[1]** PUBLIC UTILITIES — MUNICIPAL CORPORATIONS — CONSTITUTIONAL LAW.—Section 23 of article XII of the constitution, which declares that every "private corporation" which owns and operates a plant "for the production, generation, transmission, delivery or furnishing of heat, light, water or power" is a public utility subject to such control and regulation by the Railroad Commission as may be provided by the legislature, does not include municipal corporations, and, therefore, the rates charged by a municipality

in supplying its inhabitants with electricity from electric works constructed and operated by it are not under the control of the Railroad Commission.

[2] Municipal Corporations — Conduct of Public Utility — Status of Corporation.—While a municipal corporation when carrying on a public service acts in a proprietary capacity, and for some purposes with respect to such business it is subject to the same rules as private persons, it does not change its character as a municipal corporation by engaging in such an enterprise.

[3] Statutory Construction — Words of Constitution.—The words of the constitution should be given their general meaning, unless they appear to be used in a legal or technical sense.

[4] Public Utilities—Powers of Railroad Commission—Extent of Authority of Legislature—Constitutional Law.—Section 22 of article XII of the constitution, authorizing the legislature to confer upon the Railroad Commission additional powers of the same kind or different from those conferred by the section which are not inconsistent with the powers conferred upon the commission by the constitution, is limited to such powers as are cognate and germane to the purposes for which the Railroad Commission was created, and cannot be construed to give the legislature authority to confer upon the commission power to regulate the rates of service charged by municipal corporations operating municipally owned public utilities.

[5] Id.—Regulation of Rates of Electrical Corporations — Construction of Public Utilities Act—Municipally Owned Public Utilities not Included.—The provision of the Public Utilities Act conferring upon the Railroad Commission power to regulate the rates of every electrical corporation, a term which it defines as including every corporation or person owning, controlling, operating, or managing any electric plant for compensation within the state (Stats. 1915, p. 115, sec. 2, subd. r), does not empower the commission to regulate and control the rates and service of an electrical plant owned and operated by a municipality.

PROCEEDING on Certiorari to review an order of the Railroad Commission requiring a municipal corporation to file a schedule of rates for electric service.  Order annulled.

The facts are stated in the opinion of the court.

James H. Howard for Appellant.

Hugh Gordon, Douglas Brookman and Gibson, Dunn & Crutcher for Respondent.

SHAW, J.—The charter of the city of Pasadena, adopted in 1901, gives it power to construct and operate electric works and supply electricity to its inhabitants for light and heat. The city constructed electric works, and prior to 1909 began to supply its inhabitants with electricity. In 1909 it extended its wires into the adjoining city of South Pasadena, and ever since that time it has been supplying electricity to the inhabitants of the latter city for similar purposes. On August 30, 1919, on the complaint of the Pacific Light and Power Company, which was also engaged in supplying electricity to the inhabitants of South Pasadena, the Railroad Commission, in pursuance of section 14 and other provisions of the Public Utilities Act (Stats. 1915, p. 122), made an order requiring the city of Pasadena "to file with the railroad commission a complete schedule of all its rates, charges, rules and regulations for the service of electric energy to consumers within the limits of South Pasadena." The object of the present proceeding in this court is to review and annul said order on the ground that it is in excess of the jurisdiction of the commission.

The theory of the plaintiff is that the Public Utilities Act, under which the Railroad Commission made the order, has no application to any public service carried on by a municipal corporation under the authority of the constitution and laws of the state. We are of the opinion that this proposition must be sustained.

The authority of the legislature to make laws conferring powers upon the Railroad Commission is derived from sections 22 and 23 of article XII of the constitution. The defendant relies mainly on the two opening sentences of section 23, which are as follows:

"Every private corporation, and every individual or association of individuals, owning, operating, managing, or controlling any commercial railroad, interurban railroad, street railroad, canal, pipe-line, plant, or equipment, or any part of such railroad, canal, pipe-line, plant, or equipment, within this state, for the transportation or conveyance of passengers, or express matter, or freight of any kind, including crude oil, or for the transmission of telephone or telegraph messages, or for the production, generation, transmission, delivery or furnishing of heat, light, water or power or for the furnishing of storage or wharfage facilities, either directly or indirectly,

to or for the public, and every common carrier, is hereby declared to be a public utility subject to such control and regulation by the Railroad Commission as may be provided by the legislature, and every class of private corporations, individuals, or associations of individuals hereafter declared by the legislature to be public utilities shall likewise be subject to such control and regulation. The Railroad Commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the state of California, and to fix the rates to be charged for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the legislature, and the right of the legislature to confer powers upon the Railroad Commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this constitution.''

[1] It will be observed that the first sentence of this clause declares that every ''private corporation'' which owns and operates a plant ''for the production, generation, transmission, delivery or furnishing of heat, light, water or power'' is a public utility. The subsequent sentence declaring the right of the legislature to confer powers upon the Railroad Commission to be plenary is limited to the conferring of powers ''respecting public utilities.'' This, of course, means public utilities as defined in the first sentence. That sentence, by its terms, applies exclusively to private corporations and natural persons or associations of persons. It does not include a municipal corporation in the definition. The argument on behalf of the defendant is that a municipal corporation, when carrying on a public service, such as furnishing water, light, heat, or power to its inhabitants, is not acting in its governmental capacity as sovereign, but is acting in a proprietary capacity, and that for some purposes with respect to such action it is subject to the same rules as private persons. For example, it is liable in damages for injuries caused by negligence of its servants in the operation of such public service, whereas it is not so liable for negligence of its servants, such as policemen, who are carrying out its governmental powers. This proposition is well established. (*Davoust* v. *Alameda*, 149 Cal. 70, [9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536, 84 Pac. 760]; *South Pasadena* v. *Pasadena L. & W. Co.*, 152 Cal. 595, [93 Pac. 490]; *Chafor*

CLXXXIII—34

*v. Long Beach,* 174 Cal. 487, [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670].)   Upon these premises it is said, that a city acts in a dual capacity—that it is a public corporation with respect to its strictly governmental powers, and a private corporation with respect to its public service functions; that for this reason the phrase "private corporation" in section 23 must be held to include municipalities whenever the so-called proprietary powers of the municipality are concerned, and that, therefore, the legislature may confer powers upon the Railroad Commission to regulate the rates of municipalities for carrying on such public service.

[2]   It is not true that a city is a private corporation when carrying on a municipally owned public utility.   No decision so holds.   All the decisions on the subject recognize the fact that a city does not change its character by engaging in such enterprises.   The entire course of reasoning in the opinions is founded on the postulate that such city retains its character as a municipal corporation, and the burden of the arguments consists of efforts to find reasons for holding it liable to the same extent as a private corporation engaged in the same service, notwithstanding the fact that the city carries on the business as a municipal corporation.   They all assume that such city is as much a municipal corporation with respect to such business functions as it is with regard to the exercise of its purely governmental powers.   The distinction does not go to its character as a corporation, but to its liabilities in exercising one class of its powers, as compared to its liabilities in the exercise of its functions as a local governmental agency.

The phrase "private corporation" in section 23 should therefore be given its natural and ordinary meaning, and consequently this section does not include municipal corporations among the public utilities it deals with.   That this must have been the intent of the framers of the section and of the voters who adopted it is shown by other provisions of the section and by the address in its favor sent to each voter with the sample ballot and copy of the proposed amendment just prior to the election.   The section carefully provides that, notwithstanding the powers thereby given to the Railroad Commission "respecting public utilities," the powers of control over "any public utility" that were vested in any municipal corporation should not be affected by the section

unless the voters of such municipality, at an election held for that purpose, should decide to relinquish such powers. This, of course, refers to "public utilities" as defined in the opening clause of the section. The proviso would not engender the suspicion that the municipal corporation itself was included in the "public utilities" to which it refers, nor lead anyone to suppose that the voters were to be invited to surrender to the commission the control and management of any municipally owned water systems, lighting plants or street-car lines. It does strongly imply that it refers solely to the powers of such cities to regulate the operations of privately owned systems of that kind. The address to the voters, after stating that the term "public utilities" was so defined by the section as to embrace every conceivable kind of public service, summarized its effect on that subject as follows: "Briefly, the amendment proposes to extend the jurisdiction of the Railroad Commission to every kind of public service excepting that furnished by municipally owned plants," and pointed out that the provision reserving to cities the powers over public utilities theretofore vested in them was inserted in the section because of the feeling that the voters of such cities might feel reluctant to submit to the revocation of such powers and the transfer thereof to the Railroad Commission without their consent. By this address the voters were clearly informed that municipal corporations were not included in the definition of public utilities in the opening clause of the section. To hold that under all these circumstances the voters nevertheless were aware of the refined distinction between the governmental powers and proprietary powers of cities and towns and understood that municipal corporations, so far as they exercise proprietary functions, were to be included in the definition of public utilities and in the term "private corporations," seems to be the height of absurdity. While many lawyers may understand the distinction, it is certainly true that the ordinary citizen has no conception thereof.

It is true that section 23 was amended in 1914 so as to provide that the rate regulating power of municipal corporations over "public utilities" should no longer be retained by them. But the definition of the term "public utilities" remained unchanged, and the amendment made rather emphasizes the proposition that municipal corporations perform-

ing such public service were not supposed to be embraced in the definition.

Furthermore, at the election of 1911 the people also adopted an amended section 19 of article XI, which provides that "any municipal corporation may establish and operate public works for supplying its inhabitants with light, water, power, heat," and the like, and might also furnish such service to inhabitants outside its boundaries. They were empowered to do these things as municipal corporations, not as private corporations, thus showing that they were not, while so doing, to be classed as private corporations.

The conclusion we have reached is in accordance with the well-established rules for the construction of the language of a constitution. [3] The constitution, "unlike the acts of our legislature, owes its whole force and authority to its ratification by the people; and they judged of it by the meaning apparent on its face according to the general use of the words employed, where they do not appear to have been used in a legal or technical sense." (*Miller* v. *Dunn,* 72 Cal. 465, [1 Am. St. Rep. 67, 14 Pac. 27].) Where a word has a popular and also a technical meaning, "the courts will accord to it its popular meaning, unless the very nature of the subject indicates or the context suggests that it is employed in its technical sense." (*Weill* v. *Kentfield,* 54 Cal. 113.)

The defendant also claims that the right of the legislature to confer such powers upon the Railroad Commission is given by a passage in the amended section 22 of article XII, an amendment also adopted in 1911. This section creates the Railroad Commission and contains provisions for the appointment of its members and for its organization, and confers upon it certain powers with regard to common carriers of freight and passengers, and thereupon it provides that "no provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon the Railroad Commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the Railroad Commission in this constitution, and the authority of the legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this constitution."

If the provision of section 22 that "the authority of the legislature to confer upon the Railroad Commission *additional powers* of the same kind or *different from* those conferred herein which are not inconsistent with the powers conferred" upon the commission by the constitution, should be thenceforth "plenary and unlimited by any provision of this constitution," is to be taken literally, its possible results would be so startling that it cannot be conceived that any citizen could ever be induced knowingly to vote for such a measure. If so construed, the legislature would thereby be empowered to confer upon the Railroad Commission all the powers of government, executive, judicial, and even the legislative power itself.   Of course, no such effect can be allowed to this broad declaration.   It must be construed in connection with the general subject of the section, with the other sections which precede it relating to the same general subject, and with the place in which it occurs in the constitution.   It is a part of article XII, the whole of which is devoted to the subject of private corporations, as distinguished from public corporations, the latter being the particular subject of article XI.   The powers referred to are, therefore, to be understood to mean powers relating to private corporations, except where the words indicate a different intent.   Section 22 was in article XII as originally adopted.   It was the concluding section of a series beginning with section 17, all of which related to common carriers and the public control and regulation thereof.   While amendments of sections 20 and 21 were also adopted in 1911, they were not changed so as to relate to any other subject.   Section 22, before the amendment of 1911, also created a Railroad Commission and granted to it certain powers over common carriers in language in many respects similar to the amendment.   [4] Considering all these circumstances, the only reasonable conclusion is that the authority intended to be given to the legislature by this section to confer powers upon the Railroad Commission must be limited to the subject of powers over common carriers and transportation and the control and regulation thereof by the commission, and such other things as may be necessary or convenient for the proper and effectual exercise of such powers of regulation and control.   The subject of similar powers over all other classes of public utilities carried on by private corporations or persons is covered by

the provisions of section 23, as we have seen. The provisions of section 22 should not be extended beyond the matters included in the context and the subject matter of the article in which it occurs, and hence it cannot be construed to give the legislature authority to confer upon the commission power to regulate the rates of service charged by municipal corporations operating municipally owned public utilities.

This is in harmony with the interpretation heretofore given to this provision of the section. In *Pacific etc. Co.* v. *Eshleman,* 166 Cal., at page 691, [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119], the court, speaking through Justice Sloss, said concerning these clauses of sections 22 and 23: ''To the extent, then, that the legislature has acted in conferring powers (*germane to the subject of the regulation and control of public utilities*) upon the Railroad Commission, it necessarily follows that the validity of such grant of powers is not to be questioned by reason of any other provision of the state constitution.'' (Italics ours.) And again on page 702, on the same subject, the learned justice, by way of conclusion, said: ''This statement is, however, to be taken subject to the qualification that the powers conferred by the legislature upon the Railroad Commission must be such as are cognate and germane to the purposes for which the Railroad Commission was created, i. e., the regulation and control of public utilities.'' And in the same case Justice Henshaw said in summing up: ''The legality of such powers as the legislature has or may thus confer upon the commission, if cognate and germane to the subject of public utilities, may not be questioned under the state constitution'' (page 689). The court here, as the context of the opinions plainly shows, uses the phrase ''public utilities'' with the meaning given to it by the definition thereof in section 23, and as referring solely to public service carried on by private corporations or natural persons.

The defendant contends that the decision in *South Pasadena* v. *Pasadena L. & W. Co.,* 152 Cal. 579, [93 Pac. 490], is contrary to these conclusions. In that case the defendant, a private corporation, owned a water system supplying water to a defined territory situated partly in Pasadena and partly in South Pasadena, they being adjoining cities. Pasadena was about to acquire the system from the company as a part of its municipal water system. The suit was brought to

enjoin the company from making the transfer. In the course of the opinion it is declared that after Pasadena acquired the water system it would be obliged to continue the public service in South Pasadena, as before, and that South Pasadena, under section 19, article XI, and section 1, article XIV, of the constitution, as it then stood, would thereafter, as before, have the right to fix the rates to be charged for the water served within that city. The main reason given was that since the constitution then gave to each city power to fix rates for water supplied within its limits for public use, the power of South Pasadena was paramount with respect to the rates for water supplied therein. The case was decided in 1908, prior to the adoption of the constitutional amendments we are now considering. Section 19, article XI, then gave powers to cities to regulate the rates for public service of water or light within its limits by "any individual or any company duly incorporated for that purpose." Section 1, article XIV, provided that rates for the use of water supplied in any city by "any person, company, or corporation in this state" should be fixed annually by such city. The word "private" was not appended as a limitation of the meaning of the words "company" and "corporation" in these sections, as it is now in section 23 of article XII, and as there was no other body then authorized to fix such rates, the words "company" and "corporation" were obviously as applicable to rates for water supplied by a municipal corporation to the inhabitants of an adjoining city as to rates for water so supplied by any other corporation, and this the court there assumed without stating it. The decision can have no bearing upon the meaning of the words "private corporation" in the part of section 23 of article XII defining "public utility," adopted in 1911.

It may be that, by reason of the recent amendment of section 19, article XI, in the few cases where one city operates a municipal plant for a public service which extends into another city, there may be some doubt which one of the two cities shall have the right to fix the rates for such outside service. The terms of the amendment are not clear on the question. With that subject we are not here concerned. It is clear, as we have shown, that the city furnishing the outside public service is not a "public utility" within the meaning of that term, as defined in section 23, article XII, and

hence that the Railroad Commission has no power to fix its rates for such service.

[5] It is also suggested that the Public Utilities Act confers upon the commission power to regulate the rates of every "electrical corporation," a term which it defines as including "every corporation or person . . . owning, controlling, operating or managing any electric plant for compensation within the state" (Stats. 1915, p. 115, sec. 2, subd. r), and that this definition is broad enough to include municipal corporations. The language of the subdivision and also that of the other subdivisions of the section indicate that the legislative purpose extended to the regulation of commercial corporations only, and that municipal corporations were not within its purview. If municipal corporations are to be included, the result would be that the Railroad Commission would have power to regulate and control the rates and the service of every water plant, gas plant, electrical plant, and street-car system owned or operated by any municipality in the state. We cannot believe that the very general language used should be so broadly interpreted, in the absence of any specific mention of municipal corporations, even if it were conceded that the legislature under the general grant of legislative power (art. IV, sec. 1), might transfer such powers from the municipalities to the commission.

We find no tenable ground upon which to base the conclusion that the rates charged by a municipality for its service in carrying on any public utility, either within its own limits or in outside territory, are under the control of the Railroad Commission.

The order is annulled.

Angellotti, C. J., Olney, J., Wilbur, J., Lennon, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.