[L. A. No. 9622. In Bank.—September 30, 1929.]

EDWIN A. IRISH, Appellant, v. EDWIN F. HAHN et al., Respondents.

Arthur M. Ellis and Thomas S. Bunn for Appellant.

Hahn & Hahn for Respondents.

R. C. McAllister and Roscoe R. Hess, City Attorneys, and Frederick G. Stoehr and Leónard A. Diether, Deputies City Attorney of Pasadena, Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel of Los Angeles County, Jess E. Stephens, City Attorney, and William II. Neal, Deputy City Attorney of City of Los Angeles, W. Turney Fox, City Attorney, Bernard Brennan, Assistant City Attorney, and Aubrey N. Irwin, Deputy City Attorney of Glendale, as *Amici Curiae.*

SHENK, J.—This action was brought to foreclose a street assessment. Judgment went for the defendants and the plaintiff appeals on the judgment-roll alone.

The city of Pasadena acquired by purchase an electric lighting plant and distributing system for the purpose of furnishing to said city and its inhabitants electric current for light, heat and power. The purchase price was the proceeds of a general municipal bond issue voted for that purpose. No question is raised as to the power of the city generally to acquire, maintain and operate said plant and system, including the construction of underground conduits and appliances to replace the overhead .pole and wire systems. ■ By charter amendment adopted in 1909 (Stats. 1909, p. 1200), the city was authorized to prescribe by ordinance the method of procedure in levying and collecting special assessments for public improvements, including the construction of underground conduits and appliances for the use and accommodation of electric light and power wires and other uses. On December 20, 1910, the city passed an ordinance providing such procedure, following generally the plan outlined in the various statutes relating to the construction of public improvements by special assessment. This ordinance when so adopted had the same force and effect as if the terms thereof had been incorporated in the charter itself. (*Mardis* v. *McCarthy*, 162 Cal. 94, 101 [121 Pac. 389]; *Harrison* v. *Horton*, 5 Cal. App. 415 [90 Pac. 716]), and had the same force and effect within the city of an act of the legislature (*San Luis Obispo* v. *Fitzgerald*, 126 Cal. 279 [58 Pac. 699]; *Chapman* v. *City of Fullerton*, 90 Cal. App. 463 [265 Pac. 1035]).

On May 31, 1922, the board of directors of said city .adopted an ordinance of intention to order the improvement of Colorado and other streets by the construction therein of underground conduits wherein to place the electric light, power and other wires then maintained on said streets by an overhead pole and wire system. Notice and an opportunity to protest both as to the necessity of the improvement and on the question of benefits to the property proposed to be assessed were duly given. Thereafter the contract was awarded for a price of $46,720. The procedural regularity of the proceedings is not attacked in any way.

The defendants are the owners of property having a frontage of eighty-five feet on the north side of Colorado Street between Euclid and Garfield Avenues, and a depth of 231.24 feet. In front of this property the city's overhead

pole and wire system was maintained. The defendants' property was, however, served by a pole and wire system maintained on a side street running at right angles to and connecting with Colorado Street. The underground conduit was constructed on Colorado Street in front of the defendants' property for the purpose of replacing the overhead system on both streets and serving the defendants' property from the wires in the underground conduit. The improvement was completed and the property of the defendants was assessed therefor in the sum of $435.26. During the course of the proceedings the defendants made no objection to the proposed improvement or to the charge for benefits or the amount thereof or to the regularity of the proceedings. In this action to enforce the assessment they contended in the trial court, and now contend, that the city was and is without power to construct said improvement through the medium of a special assessment proceeding.

The trial court found and held that if the proceedings are not constitutionally invalid as beyond the power of the city to initiate and carry to completion, the real property of the defendants became subject to the lien in the sum prayed for in the complaint.

The bases for the claim that the proceedings are invalid are: (1) That the city acquired said electrical plant and distributing system through the proceeds of general municipal bonds for the payment of which the defendants' property is liable by general taxation; (2) that the city is maintaining and operating said plant and system in a proprietary capacity; (3) that the city charges for the services rendered by and through said system in accordance with the rates regularly established by the municipality; (4) that the underground conduits were constructed for the purpose of replacing the overhead pole and wire system; (5) that the property of the defendants was adequately served by the pole and wire system on the adjoining side street; and (6) that the city in its proprietary capacity pays into the general funds of the city an annual rental for the use of the conduits in question in order to maintain said electrical distributing system. It is therefore argued that the improvement is not shown to be public in its nature and, further, that a benefit to the defendants' property is not disclosed,

and that the proceedings are invalid for the particular reasons above stated.

From an early day in this state it has been established that a city derives its power to levy and collect a special assessment from its power of taxation. (*Emery* v. *San Francisco Gas Co.*, 28 Cal. 346.) Later cases are unvarying on this point. (See, also, *Houck* v. *Little River District*, 239 U. S. 254 [60 L. Ed. 266, 36 Sup. Ct. Rep. 58, see, also, Rose's U. S. Notes].) The right to install improvements by special assessment is, like the power of general taxation, a continuing power, and is, unless restricted by law, not exhausted by being once exercised. (*McVerry* v. *Boyd*, 89 Cal. 304 [26 Pac. 885]; McQuillin on Municipal Corporations, 2d ed., sec. 1975.) Generally speaking, the only limitations upon the exercise of the power of special assessment are that the improvement must be public in its nature and must confer a special benefit upon the property assessed. (*Federal Const. Co.* v. *Ensign*, 59 Cal. App. 200, 216 [210 Pac. 536].)

On the record before us, two major questions are presented: First, was the improvement as constructed a public improvement? And, secondly, was the defendants' property specially benefited thereby? If both these questions be answered in the affirmative, it would necessarily follow that the proceedings in question were valid and the assessment is enforceable, unless the other reasons advanced by the defendants deprived the city of the power to proceed.

We think both major questions must be answered in the affirmative. It is now generally accepted that when a municipality, lawfully so empowered, undertakes to furnish, to its inhabitants who will pay therefor, the utilities and facilities of urban life, it is thereby performing a municipal and public function. (See *Pasadena* v. *Chamberlain*, 204 Cal. 653 [269 Pac. 630]; *In re Orosi Public Utility Dist.*, 196 Cal. 43 [235 Pac. 1004].) The fact that the function is not governmental is immaterial. It may be proprietary and still be public. The distinction between the governmental and proprietary functions was never made for the purpose of adding to or detracting from either as a public function, but for the purpose of determining the liability of the municipality in tort. (*City of Pasadena* v. *Railroad*

*Commission,* 183 Cal. 526, 530 [10 A. L. R. 1425, 192 Pac. 25].)

Numerous instances might be cited where similar improvements have been declared to be public and the construction thereof justified under special assessment proceedings. In *Larsen* v. *San Francisco,* 182 Cal. 1 [186 Pac. 757], the Twin Peaks tunnel, over two miles long, was constructed for the use of the San Francisco Municipal Railway. *Brydon* v. *City of Hermosa Beach,* 93 Cal. App. 615 [270 Pac. 255], approved the construction by special assessment of ornamental lighting posts to be used in part as electric railway trolley poles. *Mills* v. *City of Elsinore,* 93 Cal. App. 753 [270 Pac. 224], approved the construction by special assessment of a municipal water supply and distributing system. *Santa Clara Valley L. Co.* v. *Meehan,* 62 Cal. App. 531 [217 Pac. 787], and *Kane* v. *Wedell,* 54 Cal. App. 516 [202 Pac. 340], approved the acquisition of an existing water distributing system by special assessment. In *Park* v. *Pacific Fire Extinguisher Co.,* 37 Cal. App. 112 [173 Pac. 615], it was held that the installation of an electric street-lighting system by special assessment was authorized by the Improvement Act of 1911 (Stats. 1911, p. 730), and that the tearing up of the streets and the placing of conduits therein for the accommodation of electric wires was "street work" as contemplated by that act. Outside of this state many similar improvements have been declared to be public improvements susceptible of being acquired or constructed by special assessment. The construction of a tunnel to be used by privately owned public utilities was approved in *Milheim* v. *Moffat Tunnel Improvement Dist.,* 262 U. S. 710 [67 L. Ed. 1194, 43 Sup. Ct. Rep. 694]. The construction of a tunnel at the expense of the taxpayers and to be used by a privately owned street railway was declared to be a public benefit in *Browne* v. *Turner,* 176 Mass. 9 [56 N. E. 969]. *Fisher* v. *City of Astoria,* 126 Or. 268 [60 A. L. R. 260, 269 Pac. 853, 857], involved the reconstruction of a street-lighting system and the replacing of cedar posts with ornamental posts and overhead wires with underground conduits. The Supreme Court of Oregon held the improvement to be for a public purpose, notwithstanding the private ownership of the electrical plant, and that the city could exercise its power of special assessment in the construction thereof, provided the property as-

sessed was especially benefited. Water and gas mains were authorized to be installed by special assessment in *Gleason* v. *Waukesha Co.*, 103 Wis. 225 [79 N. W. 249]. In *Ankeny* v. *City of Spokane*, 92 Wash. 549 [L. R. A. 1917A, 1093, 159 Pac. 806], many similar public improvements are referred to with citation of authority. (See, also, *Smith* v. *City of Seattle*, 25 Wash. 300 [65 Pac. 612].) Other illustrations and citations might be given, but sufficient have been mentioned to show that the improvement under attack is unquestionably a public improvement. (See, also, *Willmon* v. *Powell*, 91 Cal. App. 1 [266 Pac. 1029]; *Green* v. *Frazier*, 253 U. S. 233 [64 L. Ed. 878, 40 Sup. Ct. Rep. 499]; *Jones* v. *City of Portland*, 245 U. S. 217 [Ann. Cas. 1918E, 660, L. R. A. 1918C, 765, 62 L. Ed. 252, 38 Sup. Ct. Rep. 112, see, also, Rose's U. S. Notes]; *City of Tombstone* v. *Macia*, 30 Ariz. 218 [245 Pac. 677]; *Ewart* v. *Western Springs*, 180 Ill. 318 [54 N. E. 478].) ▇ We perceive no essential difference between the construction or installation of water mains to conduct water to a city for fire prevention and other purposes and their installation for domestic and other uses, and, as here, the installation of underground conduits to hold wires for fire and police signal devices and to furnish electric current to consumers of that commodity. The contention of the defendant, therefore, that the enterprise of the city of Pasadena in the construction of said underground conduits was a private, and not a public, enterprise cannot be maintained.

To the objection that the improvement was and is of no benefit to the defendants' property, at least two answers have been successfully interposed. ▇ In the first place, if the improvement is, as here, one for which a special assessment may lawfully be levied, the question of benefits may be raised only in the manner provided by law. If, as here, the ordinances authorizing and providing for the improvement afford full opportunity to the property owner to be heard on the question of benefits and no objection in that behalf is raised within the time allowed therefor, the determination of the local legislative body on the question of benefits is final and conclusive. (*Noyes* v. *Chambers and DeGolyer*, 202 Cal. 542 [261 Pac. 1006]; *Blake* v. *City of Eureka*, 201 Cal. 643 [258 Pac. 945]; *Duncan* v. *Ramish*,

142 Cal. 686 [76 Pac. 661]; *Brydon* v. *City of Hermosa Beach, supra.*)　　It is well recognized, however, that the question of benefits may become a judicial one when the determination of the city authorities is attacked on the ground of fraud (see *Rutledge* v. *City of Eureka*, 195 Cal. 404 [234 Pac. 82]), or the proceedings on their face show an abuse of discretion amounting in law to a fraud on the property owner. (*Spring Street Co.* v. *City of Los Angeles*, 170 Cal. 24 [L. R. A. 1918E, 197, 148 Pac. 217].) None of the grounds of attack which would remove this cause from the operation of the general rule may here rightfully be interposed.

Secondly, assuming that a judicial question is attempted to be raised on the question of benefits, the judgment-roll is in this condition:　　The complaint alleged in detail the several steps in the proceeding leading up to the levy of the assessment, including the passage of the ordinance establishing the district to be especially benefited by the improvement, including the defendants' property. Paragraph XI of the complaint contained the allegation, among others, that by reason of the completion of the work the property of the defendants was benefited. The only denial of this allegation was a reference to the paragraph by number and a denial of each and every allegation thereof for want of information or belief on the part of the defendants to enable them to answer. This form of denial was insufficient to meet the issue tendered. It was a mere denial of the conclusive determination of the board of directors appearing as a matter of public record and constituted an admission of the allegation. (*Mulcahy* v. *Buckley*, 100 Cal. 484 [35 Pac. 144]; 21 Cal. Jur., p. 150.) This form of the pleading may have constituted the reason why the court did not make any finding whatever on the question of benefits.

There is nothing on the face of the proceedings, in so far as they appear on the judgment-roll, which would indicate or suggest fraud, actual or constructive, or an abuse of discretion in the determination of the board of directors of the city that the property of the defendants was benefited by the improvement. The contrary is apparent.　　The poles and wires in front of the defendants' property were an obstruction in the street preventing the free use of the

thoroughfare by the defendants and the public generally. Their presence in the street constituted an element of danger and could only be justified when maintained pursuant to public authorization. Otherwise they were a nuisance. (Civ. Code, sec. 3479.) As said in *Fisher* v. *City of Astoria, supra,* the elimination of overhead wires "yields to the street a more spacious appearance," and while the improved appearance of the street as affected by the improvement may not in and of itself be sufficient benefit to justify a special assessment, we are not prepared to say that it might not have an important bearing on the question of property values beneficial to the property from in front of which the poles and wires are removed.

The fact that the construction of the underground conduit was a replacement of facilities theretofore acquired or constructed by public expense can afford no good reason for denying the city the power to do the reconstruction work by special assessment. The power so to reconstruct public improvements is not exhausted when once exercised in the absence of statutory inhibition to that end. (*Wells* v. *Wood,* 114 Cal. 255 [46 Pac. 96].) None here exists.

The defendants stress the point that their property was already adequately served by a pole and wire system from the side street and that the construction of the conduit in front of their property was unnecessary. But one of the purposes of the improvement was to eliminate the pole and wire system on the side street. This objection does not negative power of the city to conduct the proceeding but rather goes to the question of benefits which, as has been shown, the defendants have waived.

The other points urged by the defendants are collateral to the two major questions and we find in none of them a sufficient reason to invalidate the assessment on any constitutional ground.

Numerous *amici curiae* on behalf of the county of Los Angeles and municipalities in said county have presented briefs. Some of them call attention to the fact that by charter provision and by many statutes the municipalities in this state have been authorized to acquire or construct public improvements such as the one here under attack;

that in many instances the public authorities have availed themselves of this power and it is urged that if the assessment in this case be invalidated many assessment proceedings heretofore completed and pending will be uprooted and an important public function destroyed. The fact that such power is conferred on municipalities and other governmental agencies by numerous statutes and charters cannot be gainsaid, but the considerations urged by *amici curiae* could not serve to uphold an invalid assessment or confirm an unauthorized power if the same were in fact unauthorized by the Constitution or laws of the state. Such considerations do, however, accentuate the importance of this case in the field into which it has been injected.

There is nothing in the judgment-roll which would destroy the power of the city to conduct the proceedings or which would disturb the conclusiveness of the determination of the board of directors of the city on the question of benefits.

The judgment is therefore reversed.

Langdon, J., Waste, C. J., and Preston, J., concurred.

CURTIS, J., Dissenting.—We dissent. The special assessment upon which the complaint herein is predicated was levied against defendants' property for the purpose of paying the expense of constructing an underground conduit, and placing therein certain overhead wires in front of defendants' property. These wires were a part of the distributing system and electrical light plant, a public utility owned and operated by the city of Pasadena. This system and plant had been purchased by said city and paid for from the proceeds of a general bond issue. The property of defendants was a portion of the property which was taxed for the purpose of paying said bonds. The placing of said wires in a conduit underground was simply a replacement of a part of the distributing system of said utility which had been paid for by the proceeds of said bond issue. To compel the defendants to pay for said replacement in addition to what they are compelled to pay in taxes to meet the principal and interest on said bonds would impose upon them a greater charge than that exacted from the general body of consumers in said city, and would amount to double taxation. The assessment, therefore, is void as violative of the con-

stitutional provisions which assures to all the equal protection of the law. It is further violative of the Constitution which protects the defendants against the taking of their property without just compensation.

Richards, J., and Seawell, J., concurred.