[Civ. No. 8282. First Appellate District, Division One.—June 28, 1932.]

MAUDE LLOYD et al., Appellants, v. CITY OF RE-DONDO BEACH et al., Respondents.

542

George W. Crouch and Lewis .E. Whitehead for Appellants.

Harry Polglase, City Attorney, Arthur M. Ellis and Wm. M. Brown for Respondents.

GRAY, J., *pro tem.*—Certain property owners within an assessment district, who sued to enjoin respondents from executing a contract awarded pursuant to proceedings had under the "Improvement Act of 1911" for the extension of the municipal pier, appeal from a judgment of nonsuit.

Their first point is that they should have been allowed to prove that no permit for such extension had ever been obtained from the federal authorities as required by an act of Congress of March 3, 1899 (U. S. Code, Ann., title 33, sec. 401, p. 377) and that, upon such proof, they were entitled to the injunction, as, in the absence of such permit, the contract and its award were invalid. In support of their general allegation, that the city never had jurisdiction to order the work, appellants offered to prove that the proposed improvement was located in navigable waters of the Pacific Ocean and that the city had never obtained the requisite permit. Upon respondents' objection to its relevancy, the court properly rejected this offer because the allegation was a mere conclusion of law (*Spaulding* v. *Wesson*, 84 Cal. 141 [24 Pac. 377]), which tendered no issue (21 Cal. Jur. 26), and therefore was insufficient to support the introduction of evidence relative thereto. (*Germo Mfg. Co.* v. *McClellan*, 107 Cal. App. 532 [290 Pac. 534].) Thereupon appellants asked leave to amend their general allegation as to the city's lack of jurisdiction so as to specify that such lack consisted of the absence of such permit. The court being of the expressed opinion that such absence of the permit was not a jurisdictional objection, denied the request. In view of the fact that the complaint had never been amended; that respondents had never by demurrer or motion to strike objected to the allegation as a conclusion of law; that they were not taken by surprise; that no delay in the trial would have been occasioned; that no new issue was added and that, with the amendment, the case would have been tried on its merits, the trial court should have allowed the proposed amendment

544

(*Burns* v. *Scooffy*, 98 Cal. 271 [33 Pac. 86]; *Crosby* v. *Clark*, 132 Cal. 1 [63 Pac. 1022]), if such proposed amendment raised a jurisdictional defect in the proceedings. Respondents, by arguing merely that the absence of such permit did not establish the city's want of jurisdiction, practically concede the propriety of such amendment if it tendered a material issue.

While there seems to have been no previous determination of this express question by the appellate courts of this state, yet the reasoning upon an analogous question in *Southlands Co.* v. *City of San Diego*, 211 Cal. 646 [297 Pac. 521, 524], appears applicable and decisive of the question. In deciding ''whether the Acquisition and Improvement Act of 1925, or any other statute, confers authority upon municipalities to build bridges over navigable intrastate water, when such a bridge becomes reasonably necessary in the construction and improvement of a highway'', the Supreme Court held in part that: (1) ''Inasmuch as the United States possesses jurisdiction over such waters for the purpose of controlling navigation and commerce, it is obvious that the consent of the United States authorities must be secured for the construction of such a bridge''; (2) ''that the source of the authority to build a bridge over intrastate navigable waters is the state and not the United States'' and ''no approval other than that of the Secretary of War and Chief of Engineers to the location and plans of the bridge need be secured from the United States''; (3) that the neglect to get the state's consent is a jurisdictional defect which is not waived by failure to object on that ground before the local legislative body; and (4) that any contract entered into by the city for the erection of such bridge without the state's consent is void. While it is true that, as the federal permit had been granted in that case, no question as to its necessity arose, yet, since the opinion places the federal approval upon an equal basis of importance with the state's consent, it follows that what was held as the effect upon the contract of the absence of the state's consent is equally true as to the effect of the lack of federal approval. In a court proceeding to confirm an assessment for the widening of Chicago River, the property owners' objection that the city was not authorized to assess until it had first obtained federal approval of the

project was sustained in the *City of Chicago* v. *Law,* 144 Ill. 569 [33 N. E. 855]. This last case was followed in *Department of Public Works & Buildings* v. *Engel,* 315 Ill. 577 [146 N. E. 521], where it was held that an action to condemn land to be used for erecting obstructions in a navigable stream could not be maintained without first obtaining federal consent. A public utility cannot exercise the right of eminent domain in furtherance of an enterprise involving an interference with navigable waters without having first procured approval of its plans by federal authorities. (*Minnesota Canal & Power Co.* v. *Pratt,* 101 Minn. 197 [11 L. R. A. (N. S.) 105, 112 N. W. 395].) We are satisfied, therefore, that the lack of a federal permit is a jurisdictional defect which appellants should have been allowed to prove under an appropriate amendment to their complaint.

The next question presented is whether the improvement is upon submerged lands owned by the City of Redondo Beach as such ownership is contemplated by the provisions of the "Improvement Act of 1911". Statutes of 1915, page 62, granted to the city "all the right, title and interest of the State of California, held by said state by virtue of its sovereignty, in and to all the *tide lands* and *submerged lands,* within the present boundaries of said city, and situated below the line of mean high tide of the Pacific Ocean, to be forever held by said city, . . . in trust for the uses and purposes, and upon the express conditions following, to-wit: (a) Said lands shall be used by said city . . . solely . . . *for the construction, maintenance and operation thereon of wharves, docks, piers, . . . necessary or convenient for the promotion or accommodation of commerce and navigation . . . "* (Italics ours.)

The state held title to these tide lands in trust and for the benefit of the people, and such title was subservient to the public rights of navigation and fishing. (*Santa Cruz* v. *Southern Pac. R. R. Co.,* 163 Cal. 538 [126 Pac. 362]; *People* v. *California Fish Co.,* 166 Cal. 576 [138 Pac. 79].) The legislature was authorized to grant such tide lands to the city and thereupon the city succeeded to the state's title subject to the same trusts. (*Cimpher* v. *City of Oakland,* 162 Cal. 87 [121 Pac. 374]; *Los Angeles* v. *Pacific Coast S. S. Co.,* 45 Cal. App. 15 [187 Pac. 739].) By section 2

of the "Improvement Act of 1911", as amended in 1927 (Stats. 1927, p. 602), the city was "authorized and empowered to order . . . any portion . . . of . . . *tidelands or submerged lands* owned by" it "to be improved by or have constructed therein, over or thereon . . . *the building* . . . of *wharves, piers* . . . *necessary* or *convenient for the promotion or accommodation of commerce, navigation* . . . , and for aiding and securing access to the waters of said lands to the people . . . in the exercise of their rights to fish, or for the extension of public streets or places." (Italics ours.) Since the same words are used to describe the property conveyed and the location of the work—i. e., tide lands and submerged lands—in both statutes, it is apparent the legislature had in mind the same thing on each occasion, and therefore considered its conveyance a sufficient title to permit the ordering of the work. A comparison of the italicized portions of the two statutes shows that the authority to construct was in harmony with the trust created in the grant. Since the city succeeded to all the state's title, and the state by statutes has consented to the pier's construction (*Southlands Co.* v. *City of San Diego, supra*), and the proposed pier carries out the terms of the trust, it must be held that the city's title to the location of the pier is sufficient to authorize it to order the work.

Appellants next contend that the nature of the proposed improvement prevents it from conferring special benefit on the property assessed and therefore such assessment violates state and federal constitutional prohibitions against taking property without due process of law and without payment of just compensation. The work is described in the resolution of intention as the building of a wooden extension, approximately 268 feet long, to the existing municipal pier, with a boat landing, public comfort station, six rest-houses for the purpose of harboring benches or seats, and a lighting system. In order to justify a local assessment based on a theory of benefits, the proposed improvement must be public and must confer an especial and local benefit upon the property to be assessed. If, from the nature of the improvements, it can be seen that the lots to be assessed are susceptible of some substantial benefit from it, the question of the extent of the benefit received is one which,

in the absence of fraud, gross injustice or demonstrable mistake, rests peculiarly in the determination of the city council, and its action will not be interfered with by the courts. (*Federal Construction Co.* v. *Ensign,* 59 Cal. App. 200 [210 Pac. 536].) ''The test of the right to create a public improvement by special assessment does not resolve itself upon the point as to whether there exists some general public benefit because every assessment proceeding contains an element of public benefit. The test is, does there exist with relation to the work a special and peculiar benefit to the property to be assessed.'' (*Mills* v. *City of Elsinore,* 93 Cal. App. 753, 769 [270 Pac. 224, 231]; see, also, *Irish* v. *Hahn,* 208 Cal. 339 [66 A. L. R. 1382, 281 Pac. 385].)

In the present case appellants do not make the narrow contention that their property is not benefited, but broadly assert that no private property could possibly be specially benefited by a public wharf. The wharf would, from its very nature, attract pleasure seekers, desirous of boating, fishing, sightseeing, walking, etc. Such persons, in the pursuance of such pleasures, must necessarily spend money in satisfying their desires and would become potential customers of stores in the immediate vicinity of the wharf. The increased accessibility of the water, made possible by the improvement, would increase the uses to which adjacent property might be adapted. In short, business in the immediate vicinity would be stimulated by the influx of people, and property values would be created thereby. ''There is no fairer test of special benefit received than that which determines the existence and amount of such benefit by the effect of the improvement upon the market value of the property to be assessed.'' (*Federal Construction Co.* v. *Ensign, supra,* p. 212.) The growth of civilization and increase of population has greatly increased municipal functions, and in recognition of that fact the legislature from time to time has added to the purposes for which a city may levy local assessments. (See numerous instances cited in *Irish* v. *Hahn, supra.*) The express question here involved was decided adversely to appellants' contention in *Solomon* v. *Wharf Improvement Dist. No. 1,* 145 Ark. 126 [223 S. W. 385], where an injunction against an assessment for the construction of a wharf was denied. In Page and Jones on Taxation, section 360, there may be found a

collection of cases upholding local assessments for the improvement of waterways, including construction of piers and wharves, for the same reasons which justify assessments for streets. Indeed, the assessment may also be upheld upon the theory, expressed in the resolution of intention, that the municipal pier being an extension of Pier Avenue, a public street, the proposed extension is also a further extension of such street. (*Southlands Co.* v. *City of San Diego, supra.*) ▮ If appellants' objection is the narrower one, that their particular property cannot be benefited, such objection must be made to the city council, whose decision would be final and conclusive. (*Irish* v. *Hahn, supra.*)

The judgment is reversed, with instructions to allow the requested amendment to the complaint.

Knight, Acting P. J., and Cashin, J., concurred.