SOLOMON *v.* WHARF IMPROVEMENT DISTRICT No. 1, CITY OF HELENA.

Opinion delivered July 12, 1920.

1. MUNICIPAL CORPORATIONS — WHARF IMPROVEMENT DISTRICT.—An improvement district organized to construct a wharf with the necessary approaches, warehouses, a loading barge and freight-handling and loading machinery *held* authorized by Kirby's Digest, § 5664, empowering cities and towns to assess all real property within a district for the purpose of "making any local improvements of a public nature."

2. MUNICIPAL CORPORATIONS — PERMANENT IMPROVEMENT.—An improvement district created under Kirby's Digest, § 5664, for the purpose of constructing a wharf with approaches and a loading barge *held* a permanent improvement.

Appeal from Phillips Chancery Court; *A. L. Hutchinson,* Chancellor; affirmed.·

STATEMENT OF FACTS.

The city council of Helena, by an ordinance duly enacted upon the petition of property owners in that city, created a local improvement district to be known as Wharf Improvement District No. 1 of the City of Helena, and appellant, as an owner of real estate in said district, brought this suit to restrain the commissioners of the district from proceeding with the construction of the improvement. Appellant's complaint was dismissed, and he has prosecuted this appeal.

The improvement district was organized "for the purpose of constructing a wharf on the Mississippi River and the necessary approaches thereto; said wharf to consist of adequate mooring places composed of stone, concrete, wood or steel, located approximately at the foot of Arkansas Street on the Mississippi River in the city of Helena; and a loading barge of adequate size to be moored at that point; the approaches thereto, and storage places and other necessary equipment; to construct a wharf house containing two floors, a railroad track on an incline from said wharf house due east along the south side of Arkansas Street from the said wharf house to the said loading barge and wharf on the Mississippi River; also a roadway to be constructed upon Arkansas Street from the west line of Natchez Street to the east line of said wharf house; also a railroad track from Elm Street to said wharf house, together with all necessary cars, cables, hoists and other freight-handling and loading machinery necessary to make said wharf house and its appurtenances complete."

Appellant insists that the commissioners should be enjoined from the construction of the improvement for the following reasons:

*First.* The proposed improvement is not a local improvement carrying with it any special betterment to the real estate within the district; but, on the contrary, any supposed benefit accruing by reason of the improvement, accrues to the general public.

*Second.* Authority has not been conferred by statute to organize the proposed improvement district.

*Third.* The loading barge or floating wharf is not an "improvement" within the meaning of the law, in that it can not be, from its nature, lasting or permanent, and can not add anything in any way of betterment to the real estate within the district.

*Fourth.* That no power is given to municipalities under the laws of the State to place an assessment upon real estate for the proposed improvement.

The testimony offered at the trial developed the following facts and conditions. The United States Government is now, and has been for several years, operating what is known as a Government barge line from St. Louis to the city of New Orleans, for the purpose of transporting all articles of commerce which can be handled by river transportation. The barges operated by the Government are so constructed that no landing can be made along the Mississippi River for the purpose of loading and unloading freight unless such landing is equipped with the necessary facilities for loading and unloading freight from said barges to wharves, and these barges do not stop or land at Helena for the reason that the city does not possess adequate terminal facilities. The testimony further shows the belief by the property owners that the proposed improvement will greatly increase the local trade and will make the city of Helena a distributing point for large volumes of freight going by river and rail, and will result in about a twenty per cent. reduction in freight rates, and that these conditions will bring a large increase in population, both permanent and transient, and will result in a direct increase in value to the residence lots of the city as well as to the business district.

*P. R. Andrews,* for appellant.

The allegations of the complaint were fully sustained by the proof. The proposed improvement was not a local improvement carrying with it any special benefit to the real estate in the district, and no authority has been conferred by statute to organize the district. The wharf is not an "improvement," within the meaning of our laws. Kirby's Digest, § 5664; 114 Ark. 368; 70 *Id.* 463; 25 Cyc. 1533; 103 Ark. 529.

*Bevens & Mundt* and *J. G. Burke,* for appellees.

The district is a local improvement and authorized by our laws. Art. 19, § 27, Const. 1874; Kirby's Digest, § 5664; 67 Ark. 30; 131 *Id.* 66; 96 *Id.* 410-416; 25 R. C. L., p. 97, § 12; 98 Ark. 543-9; 81 *Id.* 208; 70 Ark. 451.

SMITH, J. (after stating the facts).  In the case of *Mullins* v. *Little Rock,* 131 Ark. 64, we said: "The Constitution of the State contains but one limitation upon legislative power with respect to the creation of local improvement districts, and that limitation is that the taxation of property in districts situated wholly within cities and towns must rest on the consent, actually ascertained, of a majority in value of the owners of real property. *Butler* v. *Fourche Drainage District,* 99 Ark. 100.  In other respects the legislative will is supreme, at least as far as any express constitutional limitation is concerned. Of course, there is the further limitation that since the only justification for the imposition of local assessments rests upon the enjoyment of special benefits to the property thus taxed, the amount of the tax must not exceed the special benefit derived; and also that the imposition of the tax must be uniform and free from unjust discrimination."

It is true the district there upheld was created by a special act of the Legislature; but the district here was organized under an act of the Legislature which conferred upon cities and towns authority to "assess all real property within such city, or within any district thereof, for the purpose of grading or otherwise improving streets and alleys, constructing sewers or making any local improvements of a public nature, in the manner hereinafter set forth."  Section 5664, Kirby's Digest.

In the case of *Crane* v. *Siloam Springs,* 67 Ark. 36, the entire city had been organized into an improvement district for the purpose of constructing and maintaining a general system of waterworks, and it was there contended that neither the Constitution of the State nor the statute quoted above conferred that authority; but, in holding that the district was constitutional and that legislative authority for its creation existed, the court said: "Provisions for local conveniences, like water, light, public parks for recreation and other public accommodations of the same kind, are some of the matters which are furnished or provided for by municipal corporations in their

*quasi*-private capacity, in which they act, not as an agency of the State, but exclusively for the benefit of their own inhabitants. It is in respect to such matters of local concern that the largest freedom has been allowed municipal corporations. The Constitutions of the different States, as a rule, leave their Legislatures free to confer ample powers upon such bodies in the matter of laying assessments to provide for such local conveniences when the improvement adds benefit to the local real estate. 'The case,' says Judge Cooley, 'must be extraordinary and clearly exceptive to warrant any court in declaring that the discretion has been abused, and the legislative authority exceeded.' Cooley on Taxation (2 ed.) 145, 638, 689; *State ex rel. Bulkley* v. *Williams,* 68 Conn. 131; *Williams* v. *Eggleston,* 170 U. S. 304.''

In this case of *Crane* v. *Siloam Springs* the court defined the phrase ''local improvement'' in language which has since been frequently approved as follows:

''If we look for the technical or legal meaning of the phrase 'local improvement,' we find it to be a public improvement, which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the locality of the improvement.

''In the case of *Matthews* v. *Kimball,* 70 Ark. 451, the entire city of Little Rock was organized into an improvement district for the purpose of acquiring a public park, and the statute above quoted was held sufficient to confer that authority. After quoting the statute, the court there said: ''This language is certainly broad enough to include any kind and class of improvements which will enhance the value of the real estate of the particular district; that is, benefit it. * * * The only limitation as to the character of the improvement is that it must be a local improvement and of a public nature; that is, local to the city and the inhabitants thereof, and public to the extent that it shall be free to the public under such proper regu-

lations as may be adopted for its control, management and preservation, by the city council.''

In the case of *Shibley* v. *Fort Smith & Van Buren Dist.*, 96 Ark. 410, a special act of the General Assembly incorporating portions of two counties into an improvement district for the purpose of constructing a bridge, was upheld. The court there discussed some of the questions here raised, and in its opinion said: ''This brings us to a consideration of the kindred question raised in the cases, that a bridge can not be made the subject of a local improvement, to be paid for by local assessments, for the reason, as alleged, that it is in its nature of a general benefit to the public at large, and should be constructed by general taxation. Whilst it may be true that the benefits which flow from almost all local improvements, which are usually authorized to be constructed at the expense of local property owners—street pavements, sewers, public parks, waterworks, in cities and towns, levees built for the protection of overflowed lands—all inure to the benefit of the general public to a greater or less extent, yet it is not true that a bridge, any less than improvements of the other kinds mentioned above, does not produce special benefits to adjoining lands so as to justify special assessments to defray the expenses of such improvements. A bridge for the use of the public, like a street in a city or a highway in the country, is undoubtedly of great benefit and convenience to the traveling public; nevertheless, it may be also of special benefit to adjoining lands and a fit subject for construction from the proceeds of local assessments.'' See, also, the opinion of this court in the case of *Mullins* v. *Little Rock*, 131 Ark. 59.

In vol. 1, sec. 360, Page & Jones on Taxation by Assessment, it is said that ''The reasons which justify assessments for roads and other highways are said to justify assessments for waterways.''

And we conclude, under the facts of this case, that the lands to be taxed will receive that special benefit from the proposed improvement which must exist to warrant the imposition of a tax to pay for its construction.

Upon the proposition that the improvement is not permanent, it may be said that it appears from the testimony that the purpose of the proposed improvement is to operate permanent terminals. A boat or loading barge is made necessary because there are such varying stages of water in the harbor. Other features of the proposed improvement involve grading and paving the river front and laying railroad tracks. The river front is to be paved in a way to make it impervious to the rise or fall of the river, and the use of the wharf boat or loading barge, which, of course, must be repaired from time to time, tends to make the improvement permanent by making it possible to use the improved terminals without reference to the stage of the river.

We conclude, therefore, that authority existed under the law for the construction of the proposed improvement, and the decree of the court below is, therefore, affirmed.

HART, J., dissents.