WILLIAMS *v.* ARKANSAS COUNTY COURTHOUSE IMPROVEMENT DISTRICT.

Opinion delivered May 8, 1922.

1. IMPROVEMENT DISTRICTS—QUESTION FOR JURY.—The question of what constitutes a local improvement for assessment purposes is determined by the nature and character of the improvement itself.

2. IMPROVEMENT DISTRICTS—PUBLIC PURPOSE.—A local improvement for assessment purposes must be for a public purpose, and not for a mere private purpose.

3. IMPROVEMENT DISTRICT—BENEFIT TO PROPERTY ASSESSED.—Local assessments are a species of taxation, and there must be some special or peculiar benefit to the property on which the assessment of benefit is made.

4. IMPROVEMENT DISTRICTS—BENEFIT TO PROPERTY ASSESSED.—The fact that the improvement will benefit adjoining property more than property at a distance is not conclusive as to whether the improvement is a local improvement for purposes of assessment.

5. IMPROVEMENT DISTRICTS—PURPOSE OF IMPROVEMENT.—The primary purpose and effect of a local improvement must be to benefit the adjoining property, although it may incidentally benefit the public.

6. COUNTIES—STATUTE CREATING COURTHOUSE IMPROVEMENT DISTRICT. —Sp. Acts 1921, p. 914, creating an improvement district for constructing a courthouse at Stuttgart, and providing for assessment of benefits for purposes thereof, is unconstitutional, as the construction of a county courthouse does not constitute a public improvement.

Appeal from Arkansas Chancery Court, Northern District; *John M. Elliott,* Chancellor; reversed.

*J. E. Ray,* for appellants.

Act 442 is unconstitutional in that it gives immunity from taxation to the people of the Southern District by creating no lien on their property, for an undertaking which is strictly a county purpose. Art. 2, sec. 18, Const. The act also is in violation of art. 1, sec. 10, because it impairs the obligation of contracts, in that it provides for a first lien on the property of the Northern District, whereas such a lien was created by Acts 1919, vol. 1, p. 1071, creating a road district. See also 102 U. S. 203. The act is also in violation of art. 26, sec. 6, Constitution, in that there is no uniformity of taxation in the two districts. 57 Ark. 555; 48 Ark. 370. It violates art. 7, sec. 30, because it usurps the jurisdiction of the county court; and art. 12, sec. 5, because it makes the county loan its credit to an improvement district; and further it invades the jurisdiction of the county court. 92 Ark. 53.

*John L. Ingram, Frauenthal & Johnson,* for appellees.

The lands of the district are especially benefited and enhanced in value and are the subject of an improvement district for the purpose mentioned. The creation of the district by the Legislature was within its province. 71 Ark. 478; 80 Ark. 333; 141 Ark. 612; 81 Ark. 562; 103 Ark. 127; 107 Ark. 285; 146 Ark. 288; 147 Ark. 112.

The act does not invade the jurisdiction of the county court. 104 Ark. 425; 145 Ark. 279; 138 Ark. 549; 139 Ark. 153; *Id.* 595; 142 Ark. 73; *Id.* 439; 143 Ark. 228; 144 Ark. 632.

The legislative determination of an improvement as a local one is conclusive, unless arbitrary and unfounded in reason, and is not subject to judicial interference if there is only a difference of opinion as to the wisdom or expediency of making the improvement. 130 Ark. 507; 131 Ark. 59. See also 23 A. S. R. 742; 50 Mich. 7; 147 Ind. 476 and cases cited; 153 Ind. 204; 19 Pa. 258.

HART, J.   B. L. Williams and other owners of real property in the Northern District of Arkansas County, Ark., filed their complaint against the board of commissioners of Arkansas County Courthouse Improvement District to restrain the issue of bonds and other action providing for the erection of a courthouse at Stuggart, in said district and county, and the payment thereof by local assessments on the real property in said district.

The complainants urge that the district is illegal on several grounds, but the main reliance is that the erection of a county courthouse cannot be made the subject of a local improvement.

The chancery court sustained a demurrer to the bill. The plaintiffs declining to plead further, their bill was dismissed for want of equity, and they have appealed to this court.

Arkansas County was divided into two judicial districts known as the Northern and Southern Districts of Arkansas County.   DeWitt was the county seat of the county and was named as the seat of justice for the Southern District.   Stuttgart was named as the seat of justice for the Northern District.   Acts of 1913, p. 192.

Act 442 of the Legislature of 1921 creates the Arkansas County Courthouse Improvement District. Special Acts of Arkansas, 1921, p. 914.

Sec. 3 provides that the district is formed for the purpose of purchasing a building site and constructing and equipping a building in the city of Stuttgart to be occupied by the officials of Arkansas County as a county courthouse.

Sec. 12 provides that the commissioners shall make an assessment of benefits of all the lands within the Northern District of Arkansas County for the purpose of making said improvement.

Sec. 14 provides that said assessment shall be a charge against the real property of said district for such an amount as may be necessary to complete the improvement and pay all the expenses of the district.

Sec. 21 provides that in order to hasten the work the commissioners may borrow money, issue bonds, and pledge the assessment of benefits for the payment of the principal and interest.

Sec. 29 authorizes the commissioners and the county judge to enter into an agreement for the use and occupancy of the building by county officials. It provides that such rental shall not exceed two mills per annum of the assessed value of all the real and personal property in the county. The section further provides for setting aside two mills out of the county general tax for the payment of said rent, and that such tax shall be payable only in lawful money of the United States.

Under the act, the question arises whether the Northern District of Arkansas County can be organized into an improvement district for the purpose of erecting a courthouse for the use of said district.

Counsel for the commissioners of the district rely upon our cases holding that local improvement districts may be organized for the purpose of improving roads and building bridges and wharfs. *Sallee* v. *Dalton,* 138 Ark. 549, and cases cited; *Shibley* v. *Ft. Smith & Van Buren District,* 96 Ark. 410; *Com'rs. of Broadway-Main Street Bridge Dist.* v. *Quapaw Club,* 145 Ark. 279, and *Solomon* v. *Wharf Imp. Dist. No. 1,* 145 Ark. 126.

We do not think these cases are any authority for the organization of such a local improvement district as the one in question. The question of what shall be considered a local improvement is determined by the nature and character of the improvement itself. Of course every local improvement must be for a public and not for a mere private purpose. Moreover, local assessments are a species of taxation, and there must be some special or peculiar benefit to the property upon which the assessment of benefits is made. We have held that roads, bridges and wharfs may be the subjects of local improvements because the adjoining property will be especially and peculiarly benefited and that the benefit to the public

is merely incidental. That the improvement will benefit adjoining property more than that at a distance is not conclusive as to the nature of the improvement. The primary purpose and effect of a local improvement must be to benefit the adjoining property, although it may incidentally benefit the public.

The definition in *Crane* v. *Siloam Springs,* 67 Ark. 30, is, "if we look for the technical or legal meaning of the phrase 'local improvement,' we find it to be a public improvement, which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the locality of the improvement."

The nature and character of the improvement in question shows that it is not a local improvement within the definition above given. This court has held that a county may be divided into judicial districts, but that the expense of maintaining two judicial districts in a county is necessarily a county expense, and that the revenue to pay it can be raised only by a county tax. The court further said that such a tax to be valid must be levied at a uniform rate upon all the taxable property of the county. *Hutchinson* v. *Ozark Land Co.,* 57 Ark. 554.

Again, the court said that all the affairs of the two districts are concerns of the county, and that the expenses incurred in both, whether in the holding of courts or otherwise, constitute demands against the county. So it was held that the expense of maintaining two judicial districts in a county is a county expense.

Carrying out this idea in the case of *Law* v. *Falls,* 109 Ark. 395, the court held that, a seat of justice having been established at Dardanelle and the courthouse having been destroyed by fire, the county court had the authority to direct the erection of a new building for the use of the courts of the district.

The Legislature of 1913 made the city of Stuttgart the seat of justice for the Northern District of Arkansas County. If the expense of holding the courts and otherwise maintaining two judicial districts in a county is a county expense, it would seem that it necessarily follows that the erection of a courthouse for the use of such district would also be a county expense. Of course the establishment of a seat of justice in a certain town adds to the material prosperity of the town and the surrounding country. This fact arises, however, because the seat of justice is established there and the kind and character of building to be used as a courthouse only incidentally adds to the value of the real property in the surrounding country. The establishment of a seat of justice is a governmental purpose, and the erection of a courthouse within which to carry it on also partakes of the same character.

In the case of building roads, bridges and wharfs, the primary object to be accomplished is the benefit of the adjoining property, and the benefit to the public is merely incidental. The establishment of a seat of justice and the erection of a courthouse within which to carry on governmental functions is essentially different. The primary object to be accomplished is to carry on the county government for the protection of the life, liberty, and property of the inhabitants, and the benefit to the property owners is merely incidental. Therefore the expense must be borne by the whole public and cannot be charged against the real property of a portion thereof.

In discussing what may be a local improvement in *Crane* v. *Siloam Springs*, 67 Ark. 30, Judge RIDDICK, speaking for the court, said: "In coming to this conclusion, we do not overlook or disregard the word 'local' in the phrase 'local improvements.' On the contrary, we attach much importance to it. The use of this phrase limits the power to authorize assessments in cities and towns to those public improvements which are local in their nature, and intended for the convenience and ac-

commodation of the local public, or some portion thereof, and which confer a special benefit upon the real property assessed. It distinguishes such improvements from those that are not local, but intended for the benefit of the general public. Not every improvement in a town or city is a local improvement. A county courthouse or capitol for the State might be an improvement in a town or city, and in some cases a very desirable improvement, but, being designed and intended for the use and convenience of the general public of the county or State, it would not be a 'local improvement,' within the meaning of our Constitution; or, if such a structure could in any sense be considered a local improvement, it would not be to the full extent of the cost. A town or city hall would probably come within the same category, for, while intended for the convenience of the local community, it would not usually be an improvement of such a nature as to confer a special benefit upon local real estate or the owners thereof, and therefore not a local improvement within the meaning of the law. A consideration of these and other illustrations which could be made, we think, clearly shows the meaning and purpose of the phrase 'local improvements' as used in our Constitution.''

It is true that the precise question in that case was whether the whole area of a city could be laid off into an improvement district for the purpose of constructing and maintaining a general system of waterworks. The court held that this could be done, and the language just quoted was pertinent to a discussion of that question. It shows that the idea of the court was that where the primary purpose and effect is to benefit the public it is not a local improvement, although it may incidentally benefit property in a particular locality.

On the other hand, if the primary object of the local improvement is for the use and benefit of the property owners in the proposed district, it is a local improvement, although the public may be incidentally benefited. In the case of roads, bridges and wharfs the idea of first

importance is to benefit the property included in the proposed district, and the district is not formed for the purpose of benefiting the public.

On the other hand, in the case of the erection of a courthouse the idea of paramount importance is to provide offices for the county officers, a place for the public records to be kept, and where the courts may be held. Therefore, we think that the act creating the improvement district in question for the purpose of erecting a county courthouse is unconstitutional, and that the property owners might enjoin the assessment and collection of the tax against their real estate under its provisions.

It follows that the decree will be reversed and the cause will be remanded, with directions to the chancery court to overrule the demurrer and grant the injunction prayed for in the complaint.

McCULLOCH, C. J., (dissenting.) But for the language quoted by the majority from the opinion delivered by Judge RIDDICK in *Crane* v. *Siloam Springs*, 67 Ark. 30, the question involved in the present case would give me little pause in reaching a conclusion contrary to the views expressed by the majority. As much, however, as I hold in respect the great ability of the learned judge from whom the majority have quoted, I feel compelled to characterize the language as mere *dicta* and unnecessary to the decision of the case then in hand; and, as I think it was clearly erroneous, I do not feel bound to follow it.

The question in that case was narrowed to the power to create an improvement district coextensive with the boundaries of a municipality. It was held (correctly, I think) that there was nothing in the Constitution which, either expressly or impliedly, restricted the creation of improvement districts inside of municipalities to territory less in extent than the municipality itself.

The language quoted from Judge RIDDICK's opinion was used as a mere illustration in determining whether or not the construction and establishment of a system of waterworks could be made the subject of a local improve-

ment district. It was contended in that case that, because the district comprised the whole of the territorial limits of the municipality, the improvement was necessarily general in its nature and not local, but the court held to the contrary. The fallacy of the argument appears clear when we see the intimation in the opinion that because the statute authorizes the municipality itself to construct waterworks, the improvement would necessarily be general in its nature so as to exclude the power to create an an improvement district, except for the fact that the statute itself, in express terms, authorized the creation of that kind of improvement through the agency of a local improvement district.

That argument is obviously unsound, for it has never been considered in our decisions as a test of power in the creation of local improvement districts whether or not legal authority to make the improvement exists in the county or municipality in which the district is created. On the contrary, exclusive authority over roads and bridges is conferred upon the county court, and yet we have repeatedly held that, notwithstanding that fact, such improvement may be the subject of a local improvement.

In testing the question whether or not a given improvement is local or general, we have never been controlled by the fact that the authority to make such improvement is, or is not, vested in the county or municipality, and we have steadily adhered to the rule that, even though the improvement is general in its nature, if adjacent property receives special and peculiar benefits therefrom, it may be treated as a local improvement to that extent. The correct rule is, I think, stated in the case of *Shibley* v. *Fort Smith & Van Buren Bridge District,* 96 Ark. 410, as follows:

"Whilst it may be true that the benefits which flow from almost all local improvements, which are usually authorized to be constructed at the expense of local property-owners—street pavements, sewers, public parks, wa-

terworks, in cities and towns, levees built for the protection of overflowed lands—all inure to the benefit of the general public to a greater or less extent, yet it is not true that a bridge, any less than improvements of the other kinds mentioned above, does not produce special benefits to adjoining lands so as to justify special assessments to defray the expenses of such improvements. A bridge for the use of the public, like a street in a city or a highway in the country, is undoubtedly of great benefit and convenience to the traveling public; nevertheless, it may be also of special benefit to adjoining lands and a fit subject for construction from the proceeds of local assessments. It is settled that improvement districts 'are based and sustainable only upon the theory that the local assessments levied to sustain them are imposed upon the property of persons who are specially and peculiarly benefited in the enhancement of the value of their property by the expenditure of the money collected on the assessment.' * * * * * * * Note the words, 'specially and peculiarly benefited.' The benefits need not be exclusive. The general public may also derive benefits in more remote degree, yet, if there is a special and peculiar benefit inuring to the adjoining property, local assessments are justified.''

The above was quoted with approval by this court in the recent case of *Solomon* v. *Wharf Improvement Dist. No. 1,* 145 Ark. 126, where we held that a floating wharf at the landing, on the Mississippi River, in the city of Helena, with the necessary approaches, warehouses, a loading barge and freight handling and loading machinery, was a local improvement within the meaning of the Constitution.

I can see no reason why a courthouse or any other public building may not be the subject of a local improvement, if, under the circumstances, a ''special and peculiar benefit'' inures to the adjoining property, even though it is a public building, and the general public also derives a benefit from its construction and maintenance.

The fact that the improvement is public and open to the use of the public does not prevent its being a local improvement, for all local improvements are of a public nature, like roads, bridges, parks, etc. The county-site is located by public authority, and of course the location of the site itself could not be controlled by an improvement district any more than the opening of a public road could be so controlled. But when the county-site is located under proper legal authority, the building of the courthouse may be a local improvement, just like a public road is improved after it has been laid out and established by the county court. The character of the building gives permanency and value to the location of the county-site, and thus the benefit to adjacent property is, to a great extent, enhanced. For this reason there accrues to the adjacent property a special and peculiar benefit.

Where the improvement district has been created by legislative authority, we should indulge the presumption that the facts have been ascertained and that it was found that special benefits would accrue. Courts should respect the legislative determination of the character of the improvement, unless the determination was arbitrarily and demonstrably erroneous. *Bennett* v. *Johnson,* 130 Ark. 507.

The following appropriate language is found in the opinion of the Supreme Court of Michigan in the case of *Callam* v. *Saginaw,* 50 Mich. 7:

"No one doubts the fact that the existence and occupation of good public buildings in a municipality is profitable and directly advantageous to it by making it a more important business and social center, and by stimulating private improvements which add directly to its revenues."

So it is that the construction of a handsome and pretentious public building at Stuttgart will confer peculiar benefits upon the real property inside of the district, at

least the Legislature so determined, and we should respect that determination.

My conclusion, therefore, is that the creation of the district was valid and should be upheld.