ROTER, Appellant, vs. CITY OF SUPERIOR, Respondent.

*September 3 — September 23, 1902.*

*Municipal corporations: Sewerage contract: Payment in assessment certificates: Guaranty of collection.*

1. Under the city charter of Superior (secs. 153–158, ch. 124, Laws of 1891) the cost of constructing sewers, not exceeding $2.50 per foot, must be made chargeable to the property benefited; and where a contract for such construction provided that the work should be paid for in sewer certificates issued against the property benefited, and the certificates so issued provided that the holder thereof should "have no claim upon said city of Superior in any event, except from the special assessment made for said work and for the collection of the same as provided by law, in the city of Superior, and return of same to county treasurer, when unpaid, as other delinquent taxes," the city is not a guarantor of the collection of the certificates and, if there is no failure of duty on its part, is not liable to the holder thereof in case of a failure to collect.

2. The fact that in a suit by the property owners against the city the special assessment was erroneously held void because the charter failed to provide for notice to such owners, and the city did not appeal from that decision, does not make the city liable to the holder of the certificates.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

It appears from the record that July 8, 1899, the plaintiff filed with the city clerk a claim against the city for $253.02

and interest thereon from September 24, 1895, for failure to collect from the property assessed, or the owners thereof, the amount of the four several sewer construction certificates dated on the day and year last named, and issued by the city on that day to A. Johnson & Co., contractors, on four several lots, described, respectively, and which certificates, in pursuance of authority therein stipulated, were, for value received, duly sold, assigned, and transferred to one A. Lange, September 25, 1895, and thereupon said four certificates were, for value received, duly sold, assigned, and transferred by A. Lange to the plaintiff, October 12, 1895. The common council having disallowed the claim, the case was taken by appeal to the circuit court. Thereupon the city answered, alleging the proceedings of the common council and board of public works in making the assessment in June, July, and August, 1895; the letting of the contract for the construction of the sewer to A. Johnson & Co., August 21, 1895, for the aggregate sum of $845.52; the construction of the sewer; the assessment of benefits; the issuance of such certificates; and the three several actions by lot owners to set aside such assessments and restrain the collection thereof, commenced, respectively, August 30, 1895, December 23, 1896, and July 7, 1900; and the proceedings of the common council authorizing the board of public works to view the premises, and determine the benefits, and assess the same upon the property benefited in accordance with the provisions of the charter in the summer and autumn of 1899.

A jury was waived, and the cause was tried by the court, and at the close of the trial the court made lengthy findings of fact, covering all the proceedings and litigation in respect to the assessment and the attempts on the part of the city to collect the same. And as conclusions of law the court, in effect, found (1) that the plaintiff has no claim against the city for or on account of the sewer construction certificates mentioned in his claim; (2) that such certificates were received by A.

Johnson & Co. in full payment and satisfaction of their claim against the city for the amount due them under their contract with the city for the construction of the sewer in question; (3) that the sewer construction certificates held by the plaintiff never were or became a general indebtedness or liability against the city; (4) that the defendant is entitled to judgment dismissing the claim of the plaintiff, with costs. From the judgment entered thereon accordingly the plaintiff brings this appeal.

It is undisputed that the contract made by A. Johnson & Co. with the city August 21, 1895, for the construction of the sewer, provided, among other things, that:

"Before any final estimate shall be allowed by the comptroller, the contractor will be required to sign a certificate on said estimate to the effect that he will accept the same as a settlement in full for all claims against the city of *Superior* on account of work done or materials furnished in the construction of the sewer or appurtenances thereto on the streets mentioned in the contract for which the estimate is given;" and also that:

"This work will be paid for in sewer certificates issued against the property benefited to the extent of one dollar and twenty-five cents ($1.25) per foot of property on each side of the sewer, and any cost in excess of this will be paid in cash."

It is also undisputed that each of the four sewer construction certificates issued pursuant to such contract, and held by the plaintiff, and for the failure to collect which he makes this claim, contains the following provision:

"This certificate is transferable by indorsement, but the holder thereof shall have no claim upon said city of *Superior* in any event except from the special assessment made for said work and for the collection of the same as provided by law, in the city of *Superior,* and return of same to county treasurer, when unpaid, as other delinquent taxes."

For the appellant there was a brief by *Knowles & Knowles,* and oral argument by *George P. Knowles.* They contended,

*inter alia,* that these sewer construction certificates have been
held to be absolutely void. The city has pledged its faith to
collect them, and the evidence shows that it has wholly failed
and is prevented from doing so by law. Where, therefore, the
city has the right to pay the amount of said certificate, which
is a part of the contract price, out of taxes to be raised in such
sewerage district or from sale of sewer bonds, then it is liable
if it fails to so pay them. Provisions in the city charter pre-
scribing and regulating proceedings necessary to make the
cost of repair and improvement of streets a charge upon
specific lots, are not limitations upon the general power of the
council to order such repairs and improvements, there being
no provision in the city charter that the cost thereof shall in
no event become a city charge. *Allen v. Janesville,* 35 Wis.
403; *Fowler v. Superior,* 85 Wis. 411; *Hall v. Chippewa
Falls,* 47 Wis. 267; *Zwietusch v. Milwaukee,* 55 Wis. 369.
For this reason the pledging of the faith of the city to collect
the sum with interest for the use and benefit of the holder of
these certificates is an obligation in the nature of a guaranty
on the part of the city, and if within a reasonable time after
it has used all means to make a good and valid assessment for
the purpose of paying the contractor, it fails to take advan-
tage of the other provisions of the charter to procure the
means of payment, then the city is absolutely liable for the
amount. In *Eilert v. Oshkosh,* 14 Wis. 586; *Finney v. Osh-
kosh,* 18 Wis. 209; *Fletcher v. Oshkosh,* 18 Wis. 232; *Smith
v. Milwaukee,* 18 Wis. 63; and *Hall v. Chippewa Falls,* 47
Wis. 267, the city charter itself provided that in no event
should the city be held liable on account of any work done or
ordered to be done at the expense of the lots. Consequently
these cases are not applicable to the case at bar. The provis-
ions of the sewer certificates do not relieve the city from all
liability. *Commercial Nat. Bank v. Portland,* 24 Oregon,
188, 33 Pac. 532; *Reilly v. Albany,* 112 N. Y. 42, 19 N. E.
508; *North Pacific L. & Mfg. Co. v. East Portland,* 14

Oregon, 3, 12 Pac. 4; *Cumming v. Brooklyn,* 11 Paige, 596; *Baldwin v. Oswego,* 1 Abb. Dec. 62; *Buck v. Lockport,* 6 Lansing, 251; *Richardson v. Brooklyn,* 34 Barb. 569; *Hunt v. Utica,* 18 N. Y. 442. The pledge of the city to collect the certificates, and the provision that the holder shall have no claim upon the city in any event, constitute an ambiguous guaranty, which must be construed against the guarantor. *Gates v. McKee,* 13 N. Y. 232; *Bell v. Bruen,* 1 Howard, 169; *Dobbin v. Bradley,* 17 Wend. 422; *Hoey v. Jarman,* 39 N. J. L. 523; Clark, Contracts, 592; 17 Am. & Eng. Ency. of Law (2d ed.) 17, 18, 22; *Redman v. Hartford Ins. Co.* 47 Wis. 89.

For the respondent there was a brief by *Thos. E. Lyons* and *Carl M. Wilson,* and oral argument by *Mr. Lyons.*

CASSODAY, C. J. The city contends that it is not liable to the plaintiff in this action by reason of the provisions of the sewer construction contract and certificates recited above. It is very obvious that if the plaintiff, as the holder of the certificates in question, is limited to the special assessments as therein stipulated and as agreed in the contract under which the certificates were issued, then there can be no recovery from the city in this action. But the plaintiff contends that under the charter it was optional with the city to pay for such improvement in the manner indicated, or in the manner otherwise provided in the charter, and hence that the city was pledged to collect the amount of such certificates, and that such pledge is in the nature of a guaranty of the performance of the contract. In support of such contention counsel cite the general provisions of the charter empowering the city to "construct systems of sewerage," and to issue "improvement bonds for sewerage assessment." Secs. 147–174, ch. 124, Laws of 1891.

One of the sections so cited provides that "such contract may, at the option of the city," except as therein otherwise

provided, "require the contractor to receive as payment *for so much of the work as has been assessed against the lots* benefited, interest-bearing certificates against such lots, respectively, or improvement bonds, or the proceeds of such bonds," and the residue, if any, is to "be paid out of the proceeds of the general sewer tax to be levied," etc. Sec. 153, Id. The next section provides, in effect, that after any such contract for work "to be paid for in whole or in part by such assessment, shall have been entered into, the board of public works shall make, or cause to be made, an assessment in proportion to benefits against all lots . . . benefited by the sewer . . . at the average rate of $2.50 per lineal foot, for its whole length." Sec.154, Id. Sec. 156 provides otherwise for paying "the cost of all sewers in excess of $2.50 per lineal foot, chargeable to lots and lands as provided in sec. 154." Sec. 157 authorizes the common council to levy a tax for sewerage purposes in each district not exceeding five mills on the dollar in any one year, and to issue bonds *in case anything additional is required.* Sec. 158 provides that such contractors "may receive in payment certificates against the lots, parts of lots, or parcels of lands so as heretofore directed to be assessed, *so far as the same will go,* in liquidation of the amount of such contract, and shall be entitled to receive city orders for the balance due, payable only out of the fund of the proper district, supplemented, if need be, by proceeds from the sale of general sewer bonds; and it shall be the duty of the board of public works, after the completion of any contract, and acceptance of the work, to issue such certificates on the request of the person entitled to receive them," etc.; and then provides for the payment of any sum found to be due to the contractor over and above the amount of such certificates.

From such provisions of the charter it is manifest that the cost of constructing such sewers, to the extent of $2.50 per lineal foot, must be made chargeable to the property benefited, and that the extra cost above that sum must be payable

from the sewer fund provided by the five-mill tax and the sale of general city sewer bonds. Since the cost of constructing the sewer in question did not exceed $2.50 per lineal foot, the payment therefor, whether in construction certificates or improvement bonds, or the proceeds of such bonds, was chargeable upon the lots and lands benefited thereby, as prescribed in the charter and expressly stipulated in the contract and certificates. The city was limited to the method of payment thus prescribed. The case of *Allen v. Janesville,* 35 Wis. 403, relied upon by counsel for the plaintiff, gave to the common council general power to make the improvement in case it was recommended in writing, signed by a majority of the resident owners of property abutting on such street, etc. That case was distinguished in *Hall v. Chippewa Falls,* 47 Wis. 267, 272, 2 N. W. 279, 281, where it was said:

"In *Allen v. Janesville,* 35 Wis. 403, the city had power, under its charter, to contract for the improvement of streets at the general expense of the city, and there was no provision exempting it from liability on that ground."

In that case [*Hall v. Chippewa Falls*] it was "held that the contractor cannot recover from the city under a charter which declares that 'in no event, when work is ordered to be done at the expense of any lot, shall the city be held responsible on account thereof.'" The same is true of *Zwietusch v. Milwaukee,* 55 Wis. 369, 375, 376, 13 N. W. 227, 229. As said by the late Justice TAYLOR, in cases of this kind this court has frequently held "that the contractor takes the risk of the regularity of the proceedings. He is charged with knowledge of the irregularities, if there be any; and, if his assessment fails for any reason, he is without remedy against the city." *Owens v. Milwaukee,* 47 Wis. 461, 471, 3 N. W. 3. In support of that proposition the learned justice cites five prior adjudications of this court. More recent cases support the same proposition. *Heller v. Milwaukee,* 96 Wis. 134, 138, 70 N. W. 1111, 1112; *State ex rel. Schintgen v. La*

*Crosse,* 101 Wis. 208, 210, 77 N. W. 167; *State ex rel. Donnelly v. Hobe,* 106 Wis. 411, 416, 82 N. W. 336. In the first of these cases it was expressly held that:

"Under the charter . . . providing that persons entering into contracts with the city, who agree to be paid from special assessments, shall have no claim upon the city in any event except from the collection of the special assessments made for the work contracted for, no action will lie against the city to recover the amount paid for a void certificate of the sale of land for the nonpayment of such an assessment."

It is unnecessary to consider other adjudications or authorities on this question. The city is not to be made liable on such a claim by reason of litigation by outside third parties. True, it appears that the trial court in one of such litigated cases held that the assessment was void because the charter failed to provide notice to the lot owners, and there was no appeal from such adjudication; but it was clearly error, as held in *Hennessy v. Douglas Co.* 99 Wis. 129, 74 N. W. 983; *Gleason v. Waukesha Co.* 103 Wis. 225, 232, 79 N. W. 249. The record discloses no failure of duty on the part of the city. Nor is there anything in such prior litigation to bar the city from making such defense.

*By the Court.*—The judgment of the circuit court is affirmed.