ARMORY REALTY COMPANY, Plaintiff, vs. OLSEN, Village
Clerk, and others, Defendants.   [Cross-appeals.]

*December 8, 1932—January 10, 1933.*

282

For the plaintiff there were briefs by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish* and *G. R. Hoffman* of counsel, all of Milwaukee, and oral argument by *Mr. Fish* and *Mr. Hoffman.*

For the defendants Milwaukee county, village of Shorewood, Olsen, and Krueger, there were briefs by *George A. Bowman,* district attorney of Milwaukee county, *C. Stanley Perry,* assistant corporation counsel, and *L. J. Burlingame,* village attorney of the village of Shorewood, and oral argument by *Mr. Perry* and *Mr. Burlingame.*

For other defendants there was a brief by *Lines, Spooner & Quarles,* attorneys for the United States Fidelity and Guaranty Company, *Harold M. Baum,* attorney for Sidney B. Knox, and *Maxwell H. Herriott* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott.*

NELSON, J.  Two distinct controversies are involved in this appeal.  The first controversy relates to the validity of tax certificates based upon general taxes levied upon the lands of plaintiff's grantor, the Light Horse Squadron

Armory Association (hereafter called the Association), for the years 1922, 1923, 1924, and 1925, and to the validity of certain general taxes levied or about to be levied upon the same lands by the village of Shorewood for the years 1926, 1927, and 1928. As to all of these tax certificates and taxes it is contended that they are illegal and void because the lands were at all times mentioned exempt from taxation by virtue of the provisions of sec. 70.11 (16), Stats., which is as follows:

"The property in this section described is exempt from taxation, to wit: . . . (16) The armory owned by any regiment, battalion or company of the Wisconsin National Guard and used for military purposes by such organization; but such property shall be subject to local assessments for the improvement of streets or sidewalks, or for the construction and repair of sewers or drains."

The second controversy relates to the validity of two tax certificates based upon special assessments against the lands of the association for (1) storm sewers laid by the village of Shorewood, and (2) planting trees on the boulevard portion of the street upon which the said lands abut. As to these certificates it is contended that they are null and void because the statutes under which the village of Shorewood proceeded in making the assessments are unconstitutional.

The facts are not in dispute. We content ourselves by reciting the material facts as found by the trial court. The facts relating to the first controversy are as follows: Prior to January 1, 1884, a troop of cavalry was organized in the city of Milwaukee which was known as the Light Horse Squadron. That organization, pursuant to the laws of this state, thereafter became a part of the National Guard and was known as Troop A, First Wisconsin Cavalry. In 1916 two troops, A and B, were organized out of Troop A and additional recruits. In 1917 a regiment of cavalry was organized in this state to which were assigned the officers and enlisted men of Troops A and B. In 1917 that regiment was drafted

into the service of the United States. In November, 1919, provisions were made for the maintenance of a regiment of cavalry and one separate squadron of cavalry in the state of Wisconsin. In January, 1920, Troop A, First Wisconsin Cavalry, was reorganized and remustered into the service of the state and reorganized as a unit of the National Guard. Out of said troop other cavalry units were formed which were thereafter redesignated as troops of the 105th Cavalry. During all of the years material to this controversy all of said troops were quartered upon the lands of the association, the taxation of which gives rise to this controversy.

In February, 1888, there was organized under the general corporation laws of this state a non-stock corporation known as the Light Horse Squadron Association. The purpose of such corporation, as stated in its articles of organization, was to acquire, hold, maintain, and dispose of real and personal property for military purposes and for such other purposes as may be lawfully carried on in connection therewith. The articles of organization provided that the membership of the association should consist of all persons who were active members of the Light Horse Squadron on January 1, 1884, and all who had thereafter enlisted therein down to the date of the execution of the articles, and also all persons who should thereafter enlist in such squadron during its existence and the existence of the corporation, except such persons as had theretofore or might thereafter be dishonorably discharged from the Wisconsin National Guard or expelled from membership in the squadron. Upon the organization of Troop A the articles were amended so as to provide that the members of Troop A should be members of the association. The articles further provided that the corporation shall not be dissolved so long as there remains a lawful minimum membership of the squadron; that in case of disbandment of the squadron the association shall not be dissolved except on the affirmative vote of two-thirds of its living

members; that in case of the dissolution of the corporation, the rights and interests of each member and the respective heirs of deceased members in the corporate property shall be determined by the length of his enlisted service in the squadron, and that an account of the military service of each member shall be kept. The articles further provided for honorary members who should have the privilege of the armory but no interest in the property or funds of the troop.

In the year 1884 the association purchased a piece of property located on Broadway in the city of Milwaukee and erected thereon an armory. This property was sold on contract to the city of Milwaukee in 1906 and some time thereafter the association purchased in Shorewood the tract of land involved herein upon which it erected an armory. The property of the association located on Broadway was never taxed by the city of Milwaukee. In the month of February, 1912, the board of directors of the association was authorized and directed to enter into an agreement with the commanding officers of the squadron then known as Troop A for the leasing of all of its buildings and grounds located in the village of Shorewood for the following rental, namely, an amount of money equal to the interest which the association was obliged to pay on its indebtedness, less the amount of interest which the association was receiving from the city of Milwaukee on its contract with the city of Milwaukee until the rental so figured shall amount to no more than $800.

By ch. 498 of the Laws of 1907 there was annually appropriated to the association the sum of $2,000 for the purposes of maintaining the buildings and grounds of the association, which appropriation carried the provision that within one year the association should cause to be erected upon its grounds suitable buildings to be used for military purposes and that the buildings and grounds be of a value of not less than $80,000. That law further provided that the state should at all times have the right to use the buildings and

grounds for the quartering of its troops in cases of riot, insurrection, or concentration of troops, in which case the property was to be under the control of the governor. In 1923 a new arrangement was made with the adjutant general under the terms of which there was to be paid to the association the annual sum of $7,000, the association to furnish and maintain its premises located in the village of Shorewood for the use of five units and as regimental headquarters of the 105th Cavalry, Wisconsin National Guard.

The title to the lands was at all times in the association, whose membership at the very beginning was identical or substantially identical with the membership of the troop. As the years passed, retirements from the troop took place by expiration of service and honorable discharges, so that at the time this controversy arose there were numerous members of the association who were not members of the troop, and there was consequently a wide spread between the membership in the association and the membership in the troop.

During all of the years prior to 1925 the village of Shorewood did not tax the property of the association. Prior to 1925 it appears that the assessor had described the association's property upon his assessment roll but had marked it "exempt." In 1925, however, the village of Shorewood placed the real estate of the association upon the assessment roll for that year and for the three previous years, pursuant to the provisions of sec. 70.44, Stats. Objection to the assessments was made by the association, but after hearing before the board of review the assessor was sustained. The taxes based upon such assessments were levied and, being unpaid, were returned to the county of Milwaukee. In due time tax certificates based thereon were sold to defendant Schissler.

On the 16th day of October, 1925, the association authorized its directors to execute and deliver to the state of Wisconsin a deed which conveyed all of the property in question,

but which provided that, in the event the premises should cease to be used for military purposes, the deed should then become null and void and the title should revert to the grantor. Such deed was executed and delivered but was never accepted by the state of Wisconsin because of the reversion provision contained therein. During the years 1926, 1927, and 1928 the village assessor, mistakenly believing that title to the property had vested in the state of Wisconsin, listed the property on his assessment roll but again marked it "exempt."

In February, 1929, the association commenced an action for the purpose of setting aside the deed given by it to the state. Judgment was thereafter rendered in which it was determined that the deed to the property was never delivered to the state of Wisconsin and that said deed was null and void and of no force or effect. On July 2, 1929, the association sold the property to the plaintiff herein, "subject, however, to any and all general and special taxes now or hereafter outstanding against said lands, either legally or illegally assessed."

In 1929, following the cancellation of the deed to the state of Wisconsin, the village assessor assessed said lands for the year 1929, and for the three next previous years, as property omitted from assessment.

The foregoing constitutes a sufficient statement of the facts for an understanding of the first controversy herein.

As to the second controversy, which involves the certificates based upon improvements made by the village of Shorewood, the facts are substantially as follows: Prior to October, 1927, the village had created a sewerage district pursuant to the provisions of sec. 62.18, Stats. It took the necessary steps in compliance with the requirements of said section to establish and create a sewerage district. It determined that an emergency existed and that it was necessary.

for public health and the preservation of private and public property that storm sewers be constructed in the street or streets on which the land of the association abutted. Such sewers were laid by order of the village board. An estimate of the cost thereof was thereafter prepared by the village engineer and a correct and certified statement of the total cost of said work was filed with the village clerk. A committee of the village board viewed the premises. On the 31st day of October, 1927, upon completion of the storm sewers, the village board determined that the property of the association fronting and abutting upon the streets along which the said storm sewers had been laid was benefited thereby to the extent of $5,369.03, but caused to be assessed against said land only the actual proportional cost of the work of the construction and installation of said storm sewer, which sum the said board determined to be $4,880.94. Neither the village board nor any of its officers caused notice of hearing to be given to the association that the village board had viewed the premises or of its determination and findings as to the cost of the installation and construction of said storm sewer or of its determination as to the amount of the special tax to be assessed against the association's land. In 1927 a special assessment tax was entered against the land of the association but the association did not pay it. The special assessment was returned delinquent to the county of Milwaukee and a certificate based thereon was sold to defendant Knox on the 12th day of June, 1928. A certificate was thereafter issued to him.

In 1926 a special assessment was entered against the lands of the association for the cost of planting trees on the boulevard portion of the streets upon which the association's property abutted. The amount of the special tax was $12.21. The association failed to pay it and the tax was returned delinquent. A tax certificate based thereon was thereafter, on

June 14, 1927, sold by the treasurer of Milwaukee county to defendant Schissler.

The court concluded that the property taxed was at all times owned by the association, not by the squadron or troop; that it was not exempt under the provisions of sec. 70.11 (16); that listing the property as exempt for several years did not prevent its reassessment as omitted property within the time mentioned in sec. 70.44; that the village board had authority under the provisions of sec. 61.42 to assess benefits against the lands of the association for the construction of a storm sewer; that the fact that sec. 61.42 did not specifically provide for the giving of notice does not render said section unconstitutional; that the special assessment for the planting of trees was valid and not made under an unconstitutional enactment.

### First controversy.

At all times material to this controversy the following property was exempt from taxation: "The armory owned by any regiment, battalion or company of the Wisconsin National Guard and used for military purposes by such organization." A fair construction of this language impels the conclusion that property asserted to be exempt thereunder must not only be owned by such organization (regiment, battalion, or company) but must be used for military purposes; that ownership in and of itself is not sufficient, and that use for military purposes in and of itself is not sufficient. In order that property may be held exempt under this section it is clear that it must be both *owned* by such regiment, battalion, or company and *used* for military purposes. From the undisputed facts it appears that the property in question was owned by the association, a corporation organized under the general corporation laws of this state, and that the members thereof, although including the active members of the military organization or organizations which

used the land for military purposes, included numerous persons who were not members of the military organization. May it be said that the property was owned by a regiment, battalion, or company of the Wisconsin National Guard so as to bring it within the exemption? We think not. It is generally held that "taxation is the rule and exemption the exception. He who claims exemption must bring himself within the terms of the exemption." *M. E. Church Baraca Club v. Madison,* 167 Wis. 207, 167 N. W. 258. The word "owned" as found and used in our exemption statutes is to be taken and understood to be used in its ordinary sense, calling for proprietorship of the title to the property, not a mere privilege or right to use it. *Douglas County Agric. Society v. Douglas County,* 104 Wis. 429, 80 N. W. 740; *Katzer v. Milwaukee,* 104 Wis. 16, 80 N. W. 41. Statutes which exempt property from taxation or confer special privileges with respect to taxation, if open to construction, should be read most favorably against the privilege. *Katzer v. Milwaukee, supra; Douglas County Agric. Society v. Douglas County, supra.*

While it might properly have been held at one time during the very early history of the troop and the association when the membership of the one was identical with that of the other, or substantially so, that the property of the association was exempt under the provisions of ch. 162, Laws of 1882, which first exempted from taxation an armory owned by any regiment, battalion, or company used exclusively for the purpose of such organization, we think it must be held that that time has long since passed. The spread between the membership of the association and the military organizations which used the property is so great as to leave no doubt as to the unsoundness of the plaintiff's contention that during the years 1922 to 1928, inclusive, the lands were exempt from taxation.

The facts that the armory owned by the association in the city of Milwaukee before sale thereof to the city and before purchasing the lands involved in this action was never taxed by the city of Milwaukee; that the lands herein were not taxed by the village of Shorewood prior to the year 1925 when the property was assessed for taxation and also re-assessed for the three next previous years; that the property was used for military purposes by the Wisconsin National Guard without much of any expense to either that organization or to the state of Wisconsin, are not, in the view we take of this controversy, controlling. These facts, if presented to the legislature, might strongly tend to persuade it that lands so used ought to be exempt because of the direct benefit to the state. It may well be contended that if the association had known that its lands were subject to taxation a higher rental necessarily would have resulted in order that sufficient funds might be provided with which to pay the taxes and to maintain the property in suitable repair. These considerations, however, are for the legislature, not the courts. We can only construe the statute as we find it in accordance with the established law applicable to the construction of tax-exemption statutes and apply it to the facts of an existing controversy. As was said in *Katzer v. Milwaukee, supra* (p. 21):

"It is for the legislature to grant these special privileges, and it has always been held that courts will proceed upon the assumption that whatever the legislature intends to exempt will be expressed in such clear language as to leave no doubt, and that what has been left doubtful is not intended to be exempted. *Weston v. Shawano County,* 44 Wis. 242, 256; *West Wis. R. Co. v. Trempealeau County,* 93 U. S. 595, 598; Cooley, Taxation, 205. Whatever our own opinion of general or specific policy may be is of no importance. The court is not vested with power to exempt from taxation, and is bound to enforce the tax laws of the state against all property and persons whom the legislature has not in unambiguous terms exempted therefrom."

In connection with this controversy it is further contended by the plaintiff that, since it appears that the lands in question were in fact listed on the assessment roll by the assessor but marked "exempt" during the years 1922, 1923, 1924, 1926, 1927, and 1928, the assessor had no authority to reassess the property in 1925 and 1929 for "the three next previous years." It is argued that, since the property was in fact listed but marked "exempt," it was not "omitted from the tax roll." The infirmity of this argument is found in the fact that the statutes specifically relate to "property omitted from assessment," not to "property omitted from the tax roll." That the property herein was omitted from assessment for the years 1922, 1923, and 1924 because it was thought to be exempt under the statute, and for the years 1926, 1927, and 1928 because it had been deeded to the state by a deed which was not set aside until 1929, clearly appears. No authorities specifically applicable to a reassessment of property which has been listed but marked "exempt" are cited by counsel and we have been unable to find any. The one case nearest in point is *State ex rel. M. A. Hanna Dock Co. v. Willcuts,* 143 Wis. 449, 128 N. W. 97. In that case it appears that after the circuit court for Douglas county had held certain coal on the plaintiff's docks to be exempt from local taxation the assessor therein assessed only such coal on the dock as was concededly taxable. After the decision of the circuit court mentioned was reversed by this court, where it was held that the real owner of the coal was the Dock Company, the assessor reassessed as omitted property the coal which he had not assessed the year before, under the mistaken belief, based upon the decision of the circuit court, that the same was exempt from local taxation. Upon appeal to this court the act of the assessor was approved. The facts of that case differ from the facts here in that the mistakenly exempted coal was not specifically listed by the assessor and marked "exempt." It was held in that case that

the assessor might reassess as omitted property a large quantity of coal which he had failed to assess, under the mistaken notion that it was not subject to local taxation. We do not believe that this court would have reached a contrary conclusion if the assessor in that case had listed on his assessment roll the coal actually omitted and marked it "exempt" from taxation. To hold that property listed as "exempt" by an assessor may not thereafter be reassessed as omitted property would do great violence as we view it to the spirit and purpose of sec. 70.44. The purpose of that statute is to permit within the time therein specified the reassessment of property which has been omitted from assessment. The questions involved in a reassessment proceeding must ever be: Was the property taxable in any of the three next previous years? If so, was it omitted from assessment? When these questions are answered in the affirmative the property may properly be reassessed. The mere fact that an assessor has mistakenly believed that the property is exempt ought not to militate against its proper reassessment. We conclude that the assessor herein properly reassessed the property in question.

### Second controversy.

The second controversy in this action relates to two certificates sold by Milwaukee county, based upon special assessments, (1) for surface sewers laid by the village of Shorewood and (2) for trees planted by the village along the boulevard abutting the property of plaintiff's grantor. Since the proceedings leading up to the special assessment mentioned were under different statutes and since the contentions as to each are different, the two certificates will be considered separately.

The first certificate is based upon a special assessment made against the property of plaintiff's grantor during the year 1927. Proceedings were evidently first taken by the

village of Shorewood under the provisions of sec. 62.18 to create a sewerage district, and after the storm sewers were laid the village proceeded to levy a tax upon all of the lots, tracts, and parcels in said village benefited thereby in proportion to the amount of such benefits as determined by the village board.

Plaintiff's first contention is that the special assessment and tax upon which the certificate is based was made and levied under sec. 61.42, and that since that section does not specifically provide for the giving of notice to the taxpayer or specifically provide for a hearing at which he may appear and contest the amount of the special assessment, the statute is unconstitutional and void because in violation of the due process of law provision of the constitution of the United States. Plaintiff relies on *Dietz v. Neenah,* 91 Wis. 422, 64 N. W. 299, 65 N. W. 500. In that case the charter of the city of Neenah was considered. That charter contained no provision for the giving of any notice, either actual or constructive, at any stage of the proceedings in making an assessment or levying a special tax against lotowners for the building of sewers. It was there held "that the want of any provision for notice, either actual or constructive, of the proceedings in making assessments for sewers renders the provisions of sec. 96a in the city charter unconstitutional and void and that the assessment cannot be maintained." It is clear that the law of the *Dietz Case* is not now the law of this state. Prior to the decision in the *Dietz Case* it was held in *Meggett v. Eau Claire,* 81 Wis. 326, 51 N. W. 566, that the charter of the city of Eau Claire was valid even though it did not require notice to be given to the lotowner as to the amount of special assessments with which the lots were charged. In the *Meggett Case* it was held that the due process of law provision is not violated if the owner has an opportunity to question the validity of the amount of the

special assessment either before the amount of it is determined or in subsequent proceedings for its collection. In *Hennessy v. Douglas County,* 99 Wis. 129, 74 N. W. 983, it was held that an assessment for the building of sidewalks was valid if made in pursuance of the city charter although the charter did not provide for the giving of any notice of the proceeding to lotowners. In that case it was held that the rule of the *Meggett Case* "should be adhered to instead of being restricted." In that case the validity of sewer assessments was also before the court. *Paulsen v. Portland,* 149 U. S. 30, 13 Sup. Ct. 750, was cited, apparently with full approval. It was there said (p. 38) :

"While not questioning that notice to the taxpayer in some form must be given before an assessment for the construction of a sewer can be sustained, as in any other demand upon the individual for a portion of his property, we do not think it essential to the validity of a section in the charter of a city granting power to construct sewers that there should in terms be expressed either the necessity for or the time or manner of notice. The city is a miniature state, the council is its legislature, the charter is its constitution; and it is enough if, in that, the power is granted in general terms, for when granted it must necessarily be exercised subject to all limitations imposed by constitutional provisions, and the power to prescribe the mode of its exercise is, except as restricted, subject to the legislative discretion of the council. Thus, in the case of *Gilmore v. Hentig,* 33 Kan. 156, it was held thus: 'Where a statute authorizes a city to provide for the construction of sewers and drains, and to tax the costs thereof upon the adjacent property owners, but does not require that any notice shall be given to the property owners, *held,* that such failure to require notice does not render the statute unconstitutional or void, but notice must nevertheless be given, and the city would have a broad discretion with reference to the kind of notice and the manner of giving the same.' "

The following cases thereafter decided by this court are in accord with the *Meggett Case,* not with the *Dietz Case:*

*Gleason v. Waukesha County,* 103 Wis. 225, 79 N. W. 249; *Roter v. Superior,* 115 Wis. 243, 91 N. W. 651; *Stone v. Little Yellow D. Dist.* 118 Wis. 388, 95 N. W. 405; *Lisbon Avenue Land Co. v. Lake,* 134 Wis. 470, 113 N. W. 1099. In the case last cited Mr. Justice WINSLOW, speaking for the court, said:

"Just how far this case (referring to *Dietz v. Neenah*) is to be regarded as authority, in view of later decisions of this court, may be doubtful." Citing the *Gleason, Roter,* and *Stone Cases, supra.*

The rule in this state, which is in harmony with the holdings of the United States supreme court, seems clearly to be that the failure of a statute specifically to require or prescribe the method of giving notice does not render it unconstitutional. We conclude, therefore, that sec. 61.42 was a valid constitutional enactment even though it did not specifically provide for the giving of notice.

The statute being constitutional the village board had authority to proceed to make assessments and to levy special taxes pursuant to the provisions of sec. 61.42, even though a lotowner is entitled to and must be given actual or constructive notice of a special assessment at some time during the proceedings. (See cases hereinbefore cited.) Had the plaintiff brought this action within one year from June 12, 1928, and had proven no actual or constructive notice of the special assessment herein, an entirely different question would be before us. However, this action was not brought until December 5, 1929, over six months after it was barred by sec. 75.61. That statute provides that all actions to set aside sales of land for non-payment of taxes or to cancel tax certificates, including tax certificates for special improvement taxes, must be brought within one year from the date of the tax sale and not thereafter. This court has held that that statute not only bars a right to sue to set aside a tax

certificate but actually cures any defects in the proceeding under which the tax certificate was issued. *Ruggles v. Fond du Lac County,* 63 Wis. 205, 209, 23 N. W. 416. See, also, *Hamar v. Leihy,* 124 Wis. 265, 102 N. W. 568; *Bekkedal v. Viroqua,* 183 Wis. 176, 196 N. W. 879, 197 N. W. 707.

The Guaranty Company, cross-appellant, makes contentions similar to those of the plaintiff hereinbefore considered and also contends that sec. 61.42 is unconstitutional for the further reason that it authorized the levy of a special assessment for improvements in excess of benefits. The statute provides that upon completion of the work in question and the filing by the clerk of a certified statement of the total cost of the work,—

. . . "the board may levy a tax for the whole or any part of such cost, exclusive of the cost of street and alley crossings, upon the property adjoining such portion of such street, proportioned to the frontage; provided, however, that in case of surface or storm sewers the board may levy a tax for the whole or any part of such cost upon all of the lots, tracts and parcels of land in said village benefited thereby in proportion to the amount of such benefits as determined by said village board."

While special assessments, at least for street improvements, may not be levied against property in excess of the amount of the benefits resulting from the improvement (*Boettger v. Two Rivers,* 157 Wis. 60, 144 N. W. 1097, 147 N. W. 66; *Bekkedal v. Viroqua, supra; Milwaukee E. R. & L. Co. v. Shorewood,* 181 Wis. 312, 193 N. W. 94), it does not appear that sec. 61.42 is subject to the same condemnation that was given the statute involved in *Milwaukee E. R. & L. Co. v. Shorewood, supra.* The statute involved in that action was held unconstitutional. It was held that an assessment such as was involved in that action must be based upon benefits and that proceedings giving rise to special assessments could not be upheld if the statute involved must

be so construed as to authorize an assessment upon a basis other than that of benefits. It was there said (p. 315) :

"While in the case at bar it is alleged, among other things, that the village board did not levy this assessment upon a consideration of actual benefits, it is contended, and properly so, by the plaintiff that whether such assessments were so levied or not, the proceedings cannot be upheld if the statute involved must be so construed as to authorize an assessment upon a basis other than that of benefits. In other words, if the language of the statute be such as to show an intention to grant power to levy either an arbitrary assessment or an assessment which might appear just to the board, but which is in fact not based upon benefits, then such statute necessarily contravenes the constitutional provisions above referred to and is void, and any proceedings thereunder are invalid to the same extent as though no statute on the subject had in fact been passed."

The court also said (p. 317) :

"All the authorities as far as we have been able to ascertain agree that if from the context of the entire act it can be said that it was the intent of the legislative body that the assessment shall be based upon benefits, the intent is sufficiently expressed and the statute must be upheld."

While it is obvious that the cost of an improvement may exceed the benefits therefrom, it is also obvious that the benefits may equal or even exceed, so far as a given property is concerned, the actual cost of a storm sewer installed along such property. While the language "in the case of surface or storm sewers the board may levy a tax for the whole or any part of such cost upon all of the lots, tracts and parcels of land in said village benefited thereby in proportion to the amount of such benefits as determined by said village board," is somewhat awkward in construction and lacks clarity, we think the intent of the legislature was to authorize special assessments only in respect to benefits. This being our conclusion, it follows that the statute is not, in our opinion, uncon-

stitutional because it authorizes assessments in excess of benefits. The particular assessment complained of herein was less than the actual benefits found by the village board. Since the statute, sec. 61.42, authorized the village board to act, and since the cross-complaint was not filed within the time limited by sec. 75.61, hereinbefore considered, the right to attack the certificate based upon a special tax must be held to be barred.

But one question remains for consideration. The Guaranty Company contends that sec. 86.12 is void because it provides for no notice to the owner except a demand requiring him to plant trees, which, upon his refusal so to do, may be planted by the village and the cost thereof assessed and levied as a tax pursuant to sec. 61.42 (2), (3). We think that sec. 86.12 is not subject to the charge of unconstitutionality because it does not provide for notice other than that contained in the demand to plant trees nor because it authorizes a tax in excess of actual benefits. No complaint is made that the meager cost of planting trees along the boulevard abutting the property in question, which ultimately was incorporated into a certificate for $12.61, exceeded the benefits. We conclude that the attack made upon this certificate is also barred by sec. 75.61.

. *By the Court.*—The judgment of the circuit court is affirmed.