MANUEL CARBALLO, Secretary Department of Health and SocialServices
In an opinion issued by my predecessor on February 19, 1974, (63 OAG 34) you were given the following advice:
 "In applying the general rule of state immunity from local police power to the group foster home program, I conclude that it does not extend to all group foster homes. Only facilities owned, operated or contracted for by the Department or a county agency are immune from local zoning by virtue of state immunity. Homes owned, operated or contracted for by private child welfare agencies licensed by the Department are not immune. Furthermore, all privately owned family operated homes are subject to local zoning."
Confusion has arisen due to use of the phrase "contracted for" as it appears in the second sentence of the above excerpt. You have properly pointed out that the "contracted for" language could *Page 94 
be construed in a way that would result in virtually all foster homes being immune from local zoning. The confusion is due to the fact that all foster home proprietors enter into written agreements (i.e., contracts) with the Department of Health and Social Services or a county child welfare agency. These agreements which are required by sec. 48.64, Stats., and rules promulgated thereunder, specify how children will be placed in the facility, the room and board stipend the proprietors will receive for each child, the staffing of the home and the provision of social services to children in the home.
The words "contracted for" in the previous opinion do not refer to the agreements required by sec. 48.64, Stats. Such a construction would be contrary to the opinion's conclusion that not all licensed foster homes are immune from local zoning. Even though the proprietors of privately owned foster homes and homes owned and operated by private child welfare agencies must enter into sec. 48.64, Stats., agreements, the opinion stated that such facilities do not enjoy immunity.
The state must own outright or have a possessory interest in real property in order to assert that the property falls under its immunity from local zoning. The phrase "contracted for" was drawn from sec. 48.52 (2) (a), Stats., with respect to situations where the Department of Health and Social Services (hereinafter, the Department) acquires a possessory interest in a facility. By comparison, the agreements required by sec. 48.64, Stats., amount to mere purchase agreements for child care services.[1]
New issues have arisen from discussion of this matter among members of our staffs. Consequently, you now seek my opinion on the following questions:
 "1. What types of arrangements between state agencies and persons who wish to provide group home facilities would convey a sufficient possessory interest to the state so as to extend zoning immunity to the facility?
 "2. Since the term `contracted for' was adopted from s. 48.52 (2), Wis. Stats., does it apply only to facilities *Page 95 
for which the Department contracted? If s. 48.52 (2) applies only to the Department, does s. 48.57 (1) (h) provide the basis for similar authority for county agencies?
 "3. If a state agency contracts with a non-profit corporation or organization which has leased the property from another party, does such an arrangement convey a possessory interest to the state?
 "4. If a leasor-leasee arrangement conveys a possessory interest to the state, can the agreement provide that the property will remain on the tax roll with the leasor responsible for payment of the real estate taxes?"
QUESTION ONE
In keeping with 63 OAG 34, as clarified above, it is my opinion that real property leased by the Department pursuant to sec.48.52, Stats., is immune from local zoning to the extent that the zoning conflicts with the Department's possessory use of the property for ch. 48, Stats., purposes. Other than arrangements whereby the Department acquires fee ownership, only a genuine lease agreement would vest the Department with a sufficient possessory interest so as to enable it to assert immunity for the property.
63 OAG 34 was grounded in the well-established principle that the state and its agencies are not subject to general statutes or municipal ordinances unless a statute specifically provides otherwise. Milwaukee v. McGregor (1909). 140 Wis. 35,121 N.W. 642; Green County v. Monroe (1958), 3 Wis.2d 196, 87 N.W.2d 827.Green County, supra, is cited in the 1965 revision of 8 McQuillin, Mun. Corp. (3d ed.), for the following general rule:
 "`Municipal zoning regulations or restrictions usually do not apply to the state or any of its subdivisions or agencies, unless the legislature has clearly manifested a contrary intent.'" Sec. 25.15, at 45.
In Milwaukee v. McGregor, supra, the Supreme Court partially based its decision on what is called the "statutory theory" of state immunity:
 "`. . . express authority to a state agency to do a particular thing in a particular way supersedes any local or general regulation conflicting therewith . . . .'" 140 Wis. at 37. *Page 96 
One commentator asserts that in the majority of jurisdictions, where a state agency can find authority in a statute to do a certain act, and the act results in a conflict with local zoning, the courts hold the zoning ordinances inapplicable. Wolff, TheInapplicability of Municipal Zoning Ordinances To GovernmentalLand Uses, 19 Syr. L. Rev. 698 (1968).
The Department has express statutory authority to maintain its own foster homes for the care of children in its custody or contract for the use of private facilities for that purpose. Section 48.52, Stats., provides in part:
 "(1) FACILITIES MAINTAINED OR USED FOR CHILDREN. The department may maintain or use the following facilities for the care of children in its legal custody:
"* * *
"(b) Foster homes;
"(c) Group homes;
"* * *
 "(2) USE OF OTHER FACILITIES. (a) . . . The department may also use other public facilities or contract for the use of private facilities for the care and treatment of children in its legal custody; . . ." (Emphasis supplied.)
In both legal and common language usage, "lease" is the appropriate term for describing a contract for the use of real property for a definite period of time. See sec. 704.01, Stats.;Black's Law Dictionary, 1035 (Rev. 4th ed. 1968); and, Webster'sNew World Dictionary of the American Language, 804 (Second College ed. 1968). Conversely, "a lease is a contract." Town ofMenominee v. Skubitz (1972), 53 Wis.2d 430, 435, 192 N.W.2d 887. See also, 51 C.J.S., Landlord Tenant, sec. 202 (2), p. 518.
Thus, I conclude that the principle of Milwaukee v. McGregor,supra, and Green County, supra, immunizes from local zoning foster homes leased by the Department pursuant to subsec. (2) of sec. 48.52, Stats., as well as those owned by the Department pursuant to subsec. (1). *Page 97 
There is no Wisconsin case law on the precise point of whether immunity from local zoning extends to property leased by a state agency. To the limited extent that this proposition has been litigated, it appears that the bulk of reported case law has been decided by New Jersey courts. In Tim v. City of long Branch
(1947), 135 N.J.L. 549, 53 A.2d 164, 171 A.L.R. 320, the court considered the question of whether or not an agency of the United States Government, acting pursuant to the Lanham Act, could convert a leased residence into an apartment house in violation of local zoning ordinances. The court decided in favor of the United States, holding that the agency involved had express statutory authority to ignore local zoning ordinances where it was impractical to follow them. It was held that the Lanham Act, enacted pursuant to the war powers of Congress, supersedes state and local police powers.
In Carrol v. Board of Adjustment of Jersey City (1951),15 N.J. Super. 363, 83 A.2d 448, the court considered an appeal from a judgment which revoked a building permit and set aside a zoning variance granted by a city board of adjustment. The appellant argued that the proposed building was for the use of a state agency, that a lease with the agency had been executed before the variance was granted, and that the state agency was in "dire" need of such office space. The court rejected the private lessor's claim of immunity by holding:
 "In the absence of overriding legislation to the contrary, the immunity which a governmental agency may have from use prohibitions contained in a zoning ordinance does not extend to a private owner, even though he leases the land to the governmental agency for such use." 83 A.2d at 450.
 Carrol, supra, cited Tim, supra, with approval. The court found the language in the Lanham Act, relieving the National Housing Agency from strict compliance with local zoning, to be the sort of "overriding legislation" necessary to extend immunity to property leased by a government agency. However, the "overriding legislation" test was soon abandoned.
In the later case of Thanet Corp. v. Board of Adjustment ofTownship of Princeton (1969), 104 N.J. Super. 180, 249 A.2d 31,aff'd. 260 A.2d 1, petition for certification to Appellate Division, Super. Ct., denied, 262 A.2d 207, the court considered the denial *Page 98 
of a lessor's application for a zoning variance. The lessor had executed a twenty year assignable ground lease with the United States Post Office Department. The Thanet court implicitly overruled Carrol, supra. It first determined that the Post Office Department had the authority to enter into the lease in question. Next, the court examined the Post Office Department's statutory grants of authority to determine whether or not the agency was subject to local zoning ordinances. The court found no statute subjecting the Post Office Department to local zoning requirements. The court then stated the following rule:
 "`. . . where the immunity from local zoning regulation is claimed by any agency or authority which occupies a superior position in the governmental hierarchy, the presumption is that such immunity was intended in the absence of express statutory language to the contrary.' Aviation Services v. Board of Adjustment, Hanover Township (1956), 20 N.J. 275, 282, 119 A.2d 761, 765." 249 A.2d at 33.
Finally, the court held that:
 "The United States Government, whether as owner or lessee, is immune from local zoning ordinances." 249 A.2d at 35.
It is important to note that the court does not distinguish federal immunity from state immunity, but speaks of both in identical terms.
Thanet, supra, appears to reflect the modern trend toward extending governmental zoning immunity. See Rathkopf, The Law ofZoning And Planning, 3rd ed., sec. 53-1, p. 53-11. More important, its language and reasoning appear to be in accord with the general rule of Milwaukee v. McGregor, supra, and, when applied to the question at hand, supportive of the conclusion that the Department's immunity extends to foster home facilities which it leases pursuant to sec. 48.52, Stats.
The recent amendment of sec. 13.48 (13), Stats., warrants mentioning again. As pointed out in 63 OAG 34, ch. 90, sec. 2, Laws of 1973, narrowed the scope of state immunity by amending sec. 13.48 (13), so as to make new construction of state facilities subject to local zoning. It is important to note in the context of this question that the amended statute applies to facilities *Page 99 
constructed for the benefit of or use of the state or any state agency. Thus, an arrangement whereby a new facility is to be constructed by private persons for the purpose of leasing it to the Department would not immunize the facility from local zoning.
QUESTION TWO
63 OAG 34 did not speak to the issue of whether sec. 48.57, Stats., authorized county child welfare agencies to lease foster home facilities. County child welfare agencies will not have occasion to assert immunity for leased facilities if they do not have authority to enter into such arrangements.
Section 48.52, Stats., confers powers upon the Department. It does not mention counties or county child welfare agencies. Although sec. 59.07 (1), Stats., provides county boards with broad authority to acquire or lease property for public purposes, this office has previously stated that county child welfare services must be provided according to and within the limitations of secs. 48.56 and 48.57, Stats. 51 OAG 184 (1962). Accordingly, authority for county child welfare agencies to lease foster home facilities can only be found in sec. 48.57, Stats.
Section 48.57 (1), Stats., provides, in part:
"The county agency . . . shall have authority:
"* * *
 "(c) To provide appropriate care and training for children in its legal custody, including placing those children in licensed foster homes in this state or contracting for care of them by licensed child welfare agencies.
"* * *
 "(h) To contract with any parent or guardian or other person for the care and maintenance of any child."
Section 48.52 (2), Stats., expressly authorizes "contracts" for the use of "facilities." Similarly, sec. 48.52 (1), Stats., refers to "facilities." The absence of the word "facilities" in sec. 48.57 (1), Stats., is an important omission, especially since all three sections were originally enacted by the same legislation. Chapter 575, sec. 7, Laws of 1955. *Page 100 
Although it might be possible to stretch the language of sec.48.57 (1), Stats., to encompass leases of property, I cannot advise the adoption of such a strained construction. Therefore, it is my opinion that neither sec. 48.52, Stats., nor sec. 48.57
(1), Stats., authorizes county child welfare agencies to lease real property for use as foster home facilities. Accordingly, the answer to the first part of question two is "yes," and the second part, "no."
QUESTION THREE
If the Department enters into contract under sec. 48.64, Stats., with a non-profit corporation or organization for placement of children in a facility the corporation has leased from a third party, the contract does not extend immunity from zoning to the facility. Section 48.64 agreements are mere contracts for services which do not convey a possessory interest in real estate to the Department. However, if the Department in effect subleases a leased property pursuant to sec. 48.52 (2), Stats., it would acquire a possessory interest and immunity would extend to the property.
With respect to county agencies contracting with non-profit organizations who have leased property from third parties, contracts pursuant to secs. 48.57 (1) (c) or (h) and/or 48.64, Stats., are mere service agreements conveying no possessory interest to the agency. In accordance with my opinion on question two, county agencies lack authority to sublease property for foster home use.
QUESTION FOUR
Section 70.11 (1), Stats., provides, in part:
 "The property described in this section is exempted from general property taxes:
 "(1) PROPERTY OF THE STATE. Property owned by the state . . ." (Emphasis added.)
The word "owned" is not a technical term. Rather, it is a general expression used to describe a variety of interests depending on the context in which it is used. In some instances, it may denote less than absolute (i.e., fee) ownership. State v.Jelco (1957), 1 Wis.2d 630, 635-636, 86 N.W.2d 428. Cf.,Mitchell Aero, Inc. v. Milwaukee (1969), 42 Wis.2d 656, 680,168 N.W.2d 183; Hahn v. Walworth County (1961), 14 Wis.2d 14, *Page 101 109 N.W.2d 653; State ex rel. Wisconsin Univ. Bldg. Corp. v. Bareis
(1950), 257 Wis. 497, 21 N.W.2d 721; and Ritchie v. Green Bay
(1934), 215 Wis. 433, 254 N.W. 113. But, in the context of our tax exemption statutes, "owned" has been construed to mean something more than a leasehold interest.
In Armory Realty Co. v. Olsen (1933), 210 Wis. 281, 291,246 N.W. 513, the court stated:
 ". . . The word `owned' as found and used in our exemption statutes is to be taken and understood to be used in its ordinary sense, calling for proprietorship of the title to the property, not a mere privilege or right to use it. Douglas County Agric. Society v. Douglas County, 104 Wis. 429, 80 N.W. 740; Katzer v. Milwaukee, 104 Wis. 16, 80 N.W 41. . . ."
In Douglas County Agric. Society v. Douglas County (1899),supra, the court held that the word "owned" as used in a statute exempting property of agricultural fair associations from taxation, did not exempt leased property from taxation.
In IX OAG 224 (1920), this office opined that lands leased to the board of regents of normal schools were not exempt from taxation. However, the opinion sanctioned the legitimacy of an arrangement whereby the board paid the lessor the amount of the property taxes as part of the lease agreement.
The above cited cases and opinion relied, in part, on the general rule that tax exemption statutes must be strictly construed. Even though it was recently held that this rule is not applicable when the state claims an exemption, State v. City ofMadison (1972), 55 Wis.2d 615, 198 N.W.2d 615, it is my opinion that construing "owned" in the exemption statutes to mean something more than a leasehold interest is of continuing validity. Accordingly, it is my opinion that property leased by the Department pursuant to sec. 48.52, Stats., is not rendered exempt from general property taxation by virtue of the Department's leasehold. If the property were subject to tax, it remains on the tax roll with the lessor ultimately responsible for tax payment. However, the burden of paying the tax may be allocated between the lessor and lessee in the lease agreement. *Page 102 
Regarding property taxation of foster home facilities generally, I note that sec. 70.11 (2), Stats., exempts county owned property and sec. 70.11 (19), Stats., exempts the property of a private child welfare agency, licensed pursuant to sec.48.60, Stats., which is actually used for providing care to dependent, neglected or delinquent children.
BCL:PS
[1] To avoid further confusion, it should be pointed out that the term "operated," in the phrase "owned, operated or contracted for" is surplusage in the context of determining whether a foster home facility enjoys immunity from local zoning.